**ROOS et al. v. LASSITER et al.**
No. 13360.

United States Court of Appeals
Fifth Circuit.

April 18, 1951.

Rehearing Denied June 20, 1951.

————•————

Harbert Davenport, Brownsville, Tex., for appellants.

Robt. F. Cherry, Edinburg, Tex., for appellees.

Before HOLMES and RUSSELL, Circuit Judges, and DOOLEY, District Judge.

HOLMES, Circuit Judge.

The appellees (plaintiffs below) recovered a judgment against the appellants (defendants below) for a balance claimed by appellees as due them for grubbing and clearing approximately 1600 acres of land, owned by appellants in Cameron County, Texas. A jury was waived, and the trial before the court below resulted in a judgment for appellees for the entire balance of $26,977.72, with interest from May 10, 1948. A contractor's lien to secure its payment was fixed and decreed upon said land, with an appropriate foreclosure provision if payment as adjudged should not be made.

The trial court found that, after a personal conference with defendant Edward Roos, the plaintiff Lassiter submitted to him a written proposal, with reference to said land, to knock and rack the brush, pick up the top ground, burn the brush, plow the ground not less than 16 to 18 inches, pick up the roots, burn them, float the ground, then rake both ways, pick up the roots, then float the ground. The proposal continued: "I will start in two days to work on the job. The dozers will start first, then in about two days I will start racks and burn the brush then plow right after the fire goes out." (Signed) Ralph Lassiter, Phone 108, Edinburg, Texas.

In January, 1948, the agreement was consummated in writing by a letter addressed to plaintiff Lassiter, signed in behalf of defendant by his agent (at that time) McLeod. The letter reads as follows:

"Mr. Ralph Lassiter
Edinburg, Texas.

"Under authority given me by the owner, Edward Roos, of approximately 1900 acres of land to San Pedro Grant, Cameron County, Texas, it is understood and agreed that you are to have the clearing contract on this tract of land and to be paid a price of $41.50 per acre according to the attached statement given Mr. Roos by yourself.

"It is further understood that you are to be paid on each 100 acres of land that is completed and ready for cultivation as it is finished.

"It is further understood that all of the contract will be completed and the land ready for cotton planting by March 1st, 1948, unless unavoidable circumstances prevent the completion of the clearing.

"I believe this constitutes the entire agreement, and if this is satisfactory you may sign a copy of this letter as acceptable to you.

"Yours very truly,
Wimberly McLeod
"Accepted
"(s) Ralph Lassiter
WMc:lad."

Appellees, for the purposes of this trial, construed the contract as follows, R. 96:

"The land was to be cleared at a price of $41.50 per acre and the writing was brief; in effect, it required him to knock the brush with a root plow and float the ground. * * * To knock the brush with a bulldozer and to root plow the ground and clear up the roots and burn them and then float the ground. Floating, as I understand meaning sort of harrowing. And the contract was made in December, 1947, and was to be performed in January, February, and March, perhaps, but was to be completed, except for conditions not under the control of the Plaintiff, Mr. Lassiter, in time for the planting of cotton crop in 1948. That is the substance of the contract. * * *"

Under date of March 4, 1948, appellee Lassiter wrote appellant John A. Roos, R. 223:

"Mr. John Roos
Erie Engine & Manufacturing Co.
Erie, Pennsylvaia.
"Dear Mr. Roos:

"Herewith enclosed is bill approved by Mr. Wimberly McLeod, and will thank you for a check for the amount listed on the bill.

"Fully expect to have the entire acreage ready for planting barring weather conditions.

"Yours very truly,
"Encl.        Ralph Lassiter."

But the court held, R. 389: "I find that, as construed by the parties, time was not of the essence of the contract and that defendants, although complaining and dissatisfied, acquiesced in the delay and accepted the benefit of plaintiffs' services. A balance of $26,977.72 is due plaintiffs from defendants."

Appellants sought to reconcile this conflict between the court's findings and appellees' interpretation of the contract by moving to amend the findings to read, R. 380:

"(1) There is no real controversy but that all parties construed that portion of the letter contract between Plaintiffs and Defendants, which provided that 'It is further understood that all of the contract will be completed and the land ready for

cotton planting by March 1st, 1948, unless unavoidable circumstances prevent the completion of the clearing.' to mean that Defendants' land should be cleared, grubbed and ready for cotton planting not later than April 1st, 1948; which was the time limit under the Federal Pink Bollworm Quarantine for planting cotton in the area in which the Defendants' land is situated; and that, as so construed by the parties, time of performance was of the essence of the contract on which Plaintiffs sue."

Appellants' motion was overruled, and they contend that the learned trial judge fell into error on this and other points, because he concluded too early in the trial that appellants had waived their rights to proper and timely performance of the contract by making payments on account of appellees' partial performance, with knowledge that the contract had not been completed prior to March 1, 1948 (R. 172–173; 201–202), in literal compliance with its terms, and that this too-quick conclusion influenced all subsequent rulings of the court below.

The district court found that appellants, knowing that the contract had not been completed prior to March 1, 1948, and that appellees were undertaking to complete it prior to March 31st, made two payments of $20,000 on account of the contract during the month of March, 1948; the first was made "without prejudice to our rights" (R. 229) on March 10, 1948, and the second made on account (R. 77), March 24, 1948.

As to the two payments, appellant Edward Roos testified as follows (R. 357, 358, 359): "The manner in which Lassiter proceeded to clear the land did not lend itself to payment in 100 acre blocks. That is, it was not cleared 100 acres at a time. The process of clearing the land consisted of about five different operations and Lassiter's plan of work was to complete one operation on the entire tract to be cleared and then proceeded with the next operation. I knew, as he did, that he would have to exercise real energy to accomplish the essential purpose of my contract with him, which was to put the land in condition for farming in time to plant a cotton crop in 1948. I was not informed as to Las-

siter's financial situation and did not want him handicapped in the performance of his contract by lack of funds. When he sent me his first estimate, in excess of $18,000.-00, I did not know whether he had completed the clearing of any portion of the land; but I had been informed by McLeod, and, about March 12 by telephone conversation with Lassiter, that his job of clearing was being completed. I, therefore, directed my son, Mr. John A. Roos, who was acting as my paymaster, not to recognize Lassiter's estimate but, without waiving any of my rights and without accepting a definite number of acres as being fully cleared, to make a substantial payment to Lassiter, on account, so that Lassiter would not be impeded financially in completing anything which remained to be completed in time for cotton planting before the deadline of March 31. I believe that Lassiter's second estimate was received by my son at Erie, Pennsylvania, while I was in Cameron County, Texas, after March 16, 1948, or en route. * * * To achieve my purpose of having the land cleared for planting that month, it was necessary to avoid any conflict with Lassiter at that crucial time. I reasoned that at least $40,-000.00 worth of work had been done and that, although no 100 acre plots had been completely cleared, I was retaining enough of the contract price to compel completion of the contract according to its terms. * * *"

It is beyond question, from the evidence in this record, that the appellees failed fully to perform, on or before March 31, 1948, the obligations upon them under their contract. It is also clear that the parties intended the contract to be performed during January, February, and perhaps March, 1948, and except for conditions beyond the control of appellees, in time for the planting of the cotton crop in 1948. Time was of the essence of the contract, because under regulations of the Secretary of Agriculture cotton could not be planted on this land during that year after March 31st. Time is of the essence when it is expressly made so or when it clearly appears from the contract itself, or the circumstances of the case, that such was the

intention of the parties. Waiver is largely a question of intention, and may be either express or implied. There was no express waiver here of the time of performance, and no sufficient basis to imply one. On March 4, 1948, appellee Ralph Lassiter wrote appellant John A. Roos: "Fully expect to have entire acreage ready for planting barring weather conditions." It is not shown that any weather conditions prevented performance after that date.

Since the contract was not performed by appellees within the time specified, a recovery for anything done under it must be on a *quantum meruit* basis. Texas Jurisprudence, 10, 416–427; Bush v. W. M. Johnson Gin Co., Tex.Civ.App., 138 S.W.2d 157; Texas Associates v. Joe Bland Construction Co., Tex.Civ.App., 222 S.W.2d 413, 418. The judgment appealed from is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed.