In re Jack G. BROOKS, M.D., Debtor.

**Bankruptcy No. 485–41159.**

United States Bankruptcy Court,
N.D. Texas,
Fort Worth Division.

March 27, 1986.

J. Robert Forshey, Cantey, Hanger, Gooch, Munn & Collins, Fort Worth, Tex., for InterFirst Bank Fort Worth.

John Gamboa, Law Offices of Jim Claunch, and G. Thomas Boswell, Law, Snakard & Gambill, Fort Worth, Tex., for debtor Jack G. Brooks, M.D.

Jared D. Giddens, Hastie & Kirschner, Oklahoma City, Okl., for First Nat. Bank and Trust Co. of Oklahoma City.

## MEMORANDUM OPINION AND ORDER REGARDING DEBTOR'S CLAIM OF EXEMPTIONS

MICHAEL A. McCONNELL, Bankruptcy Judge.

On March 5, 1986, the Court held an evidentiary hearing on the objections filed by InterFirst Bank Fort Worth, N.A. and the First National Bank and Trust of Oklahoma City to the Debtor's schedules of exempt property. The objections were filed pursuant to Bankruptcy Rule 4003(b) and constituted a "contested matter" for purposes of Rule 9014. The Banks object to the exempt status of the Debtor's interest in a profit sharing plan and to the exempt status of a portion of the Debtor's post-petition earnings.

All post-hearing briefs have now been filed; and the Court, having heard the evidence and the arguments of counsel, now enters the following findings of fact and conclusions of law pursuant to Bankruptcy Rules 7052 and 9014:

### FINDINGS OF FACT

1. Dr. Brooks ("Brooks" or "the Debtor") filed his bankruptcy proceeding on Au-

gust 19, 1985 seeking relief under Chapter 11 of the Bankruptcy Code after apparently suffering extensive losses in his oil and gas and race horse investments. In addition to other assets and debts, Dr. Brooks listed debts of $940,000.00 to First National Bank and Trust and $353,000.00 to Inter-First Bank of Fort Worth.

2. Dr. Brooks is a physician practicing in the area of diagnostic radiology as an associate in Radiology Associates of Fort Worth, a Texas professional corporation ("Radiology Associates"). Radiology Associates employs thirty-two physicians and approximately ninety support personnel. Each physician who is an associate in Radiology Associates, including the Debtor, owns one share of common stock in Radiology Associates, Inc.

3. Radiology Associates is composed of six different clusters or groups of physicians practicing radiology in the Tarrant County, Texas area. Each cluster or group of physicians practices in connection with a hospital in the Fort Worth/Tarrant County area. For many years, Radiology Associates has maintained arrangements with the hospitals whereby Radiology Associates is granted the exclusive right to provide diagnostic radiology services to all patients in those hospitals. The arrangement with the hospital includes Radiology Associates' exclusive right to utilize the diagnostic equipment located in the hospital.

4. Radiology Associates is governed by a Board of Directors and the membership of the Board of Directors is rotated on a periodic basis among the various members of the association.

5. The Association also has an Executive Committee, consisting of six members, which makes determinations and recommendations respecting financial matters including annually setting the salaries paid to the members of the association. One member from each "cluster" of doctors is elected to the Executive Committee. The Debtor has been a member of the Executive Committee in the past. Each doctor has an equal voice in the selection of his group's representative to the Executive Committee.

6. The members of Radiology Associates hold monthly associate's meetings at which financial and other important matters are brought before the membership for decision. The Debtor attends these meetings and participates as a full associate with an equal voice in management of the association.

7. The Debtor purchased his share of common stock of Radiology Associates for $2,099.00 in 1972. The share of stock owned by the Debtor is presently valued pursuant to Section 4 of Article V of the By-Laws, Radiology Associates of Fort Worth ("the Bylaws") at approximately $5,000.00 and is conceded by all parties to be an asset of the Debtor's bankruptcy estate. The value of each share of stock in Radiology Associates is calculated by determining the appraised value of the various assets of Radiology Associates pursuant to Section 4 of Article V of the Bylaws and subtracting therefrom any liabilities of Radiology Associates. Pursuant to Section 4 of Article V of the Bylaws, goodwill, accounts receivable and appreciation of fixed assets are deemed to have no value for purposes of valuing shares of stock in Radiology Associates. The resulting appraised value is then divided by the number of outstanding shares of common stock in Radiology Associates. The true value of the shares of Radiology Associates is substantially undervalued due to the deletion of goodwill and accounts receivable, both of which have substantial value.

9. Radiology Associates' budget is determined for each calendar year at the end of the preceding calendar year. In effect, the budgeting process determines the estimated net profit of Radiology Associates prior to the payment of compensation to the associates in Radiology Associates. The resulting estimated profit is then divided by the number of associates to arrive at the compensation to be received by each associate for the succeeding year.

### The Compensation Package

10. The result of the budgeting process is that Radiology Associates distributes all

net profits to the associates in the form of a compensation "package" consisting of both their salary and an annual contribution to the profit sharing plan in the amount of fifteen percent (15%) of the associate's compensation not to exceed $30,000.00. Each associate receives an equal salary and an equal contribution to the profit sharing plan.

11. The Debtor's annual salary for calendar years 1982 through 1985 was as follows:

| Year | Amount |
| --- | --- |
| 1982 | $224,250.00 |
| 1983 | 249,197.00 |
| 1984 | 228,072.00 |
| 1985 | 242,000.00 |

The Debtor's 1986 salary is at approximately the same level as his 1985 salary. The Debtor's present take-home pay is approximately $16,000.00 per month. The Debtor's current family living expenses are approximately $5,000.00—$5,700.00 per month.

12. Radiology Associates has never distributed any dividends to its shareholders. All payments and distributions of profit by Radiology Associates have been in the form of salary distributions to the associates, payments to the profit sharing plan and other incidental fringe benefits.

13. As a result of Radiology Associates' policy of distributing one hundred percent (100%) of the "net profits" to the associates in the form of compensation, Radiology Associates has accumulated few tangible assets.[1]

14. The practice of diagnostic radiology requires access to the use of extremely expensive equipment. A Cat Scanner, one such piece of equipment, can cost in excess of one million dollars. The hospitals have entered into an arrangement with Radiology Associates whereby the hospital supplies all of the equipment required to practice diagnostic radiology at no cost to Radiology Associates.

15. The equipment which is used in the operation of Radiology Associates' outpatient facilities is leased by Radiology Associates from Fort Worth Radiology Corporation ("Radiology Corporation"). Radiology Corporation is owned by certain of the members of Radiology Associates. The equipment which Radiology Corporation leases to Radiology Associates has substantial value.

16. Another asset with significant value to Radiology Associates is the outstanding accounts receivable. The average daily balance of Radiology Associates' accounts receivables is $3,200,000.00. The value of accounts receivable attributable to each share of Radiology Associates stock exceeds $100,000.00. The accounts receivable balance is in addition to the average daily cash balance of $400,000.00.

17. The most significant asset owned by Radiology Associates is the exclusive right to practice diagnostic radiology in the various hospitals in which Radiology Associates performs radiology. The value of the exclusive franchise with each hospital is not included or reflected upon the books and records of Radiology Associates and, therefore, is not included in the computation of value of the Radiology Associates common stock owned by the Debtor. Nor is the value of free access to the equipment supplied by each of the hospitals with which Radiology Associates has an arrangement reflected in the value of the Radiology Associates common stock.

18. Radiology Associates' arrangement with the hospitals provides Radiology Associates with access to prohibitively expensive equipment and a steady supply of patients. Each is a significant factor in the ability of Radiology Associates to earn a profit and generate the significant cash flow distributed to each associate as compensation. The Debtor's successful practice of diagnostic radiology, whether with Radiology Associates or otherwise, is de-

---

1. "Net profits" were defined both by the Debtor and Larry Hamilton, Radiology Associates' business manager, as the funds remaining after the payment of expenses and which are available for distribution to equity owners such as the Debtor.

pendent upon access to a busy hospital equipped with the necessary equipment.

### The Profit Sharing Plan

19. Radiology Associates established a qualified Defined Contribution Plan in 1968 which it has maintained since that time known as the "Profit Sharing and Thrift Plan of Radiology Associates of Fort Worth" ("the Plan"). Each participant or beneficiary under the Plan, including the Debtor, has a separate segregated account. The Debtor has been a participant in the Plan since 1972.

20. In order to meet the requirements of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1056(d)(1) (1975), and to qualify for tax exempt status under the Internal Revenue Code, 26 U.S.C. § 401(a)(13) (1978), Section 17.2 of the Plan included the following anti-alienation and anti-assignment clauses:

"No Participant, Former Participant or Beneficiary shall have the right to assign or transfer his interest hereunder, nor shall his interest be subject to claims of his creditors or others, it being understood that all provisions of this Agreement shall be for the exclusive benefit of those designated herein; provided, however, if a Participant, former Participant or Beneficiary, who has become entitled to receive payment of benefits hereunder is indebted to the Employer, the Committee may direct the Trustee to pay such indebtedness and charge the same against the Individual Account of said Participant, Former Participant or Beneficiary."

21. The Plan is administered by a "Retirement Plan Committee" consisting of five physicians who are employees of Radiology Associates appointed annually by the Executive Committee of Radiology Associates.

22. The Trustee for the Plan is InterFirst Bank-Fort Worth, a national banking association.

23. There are presently approximately 100 employees of Radiology Associates who are currently "participants" in the Plan, and Radiology Associates makes monthly contributions to the Plan on behalf of all Plan participants. Contributions are made by Radiology Associates from accrued or present net profits pursuant to Section 4.4 of the Plan.

24. The Debtor's vested interest in the Plan as of December 31, 1984 was in the amount of $495,139.52. The Debtor's interest in the Plan consisted solely of contributions made by Debtor's employer to the Plan and the income which the Debtor's Plan account had earned from investment by the Plan Trustee. The balance in the Debtor's account as of January 1, 1986 was $645,123.09.

25. The Plan provides for distributions to Plan participants only in the event of death, disability, normal retirement or termination of employment.

26. The Debtor has never received a distribution from the Plan, or made any contribution to the Plan from his personal funds or from any other source. Furthermore, the Debtor has never applied for, nor received, a loan from the Plan.

27. The Plan provides that loans may be made to a Plan participant only if such loan is needed by the Plan participant for (a) medical hardship, (b) educational needs of immediate family, or (c) home improvement provided the loan application is approved by the Retirement Plan Committee.

28. A loan application to borrow from the Plan must first be submitted and approved by the "Retirement Plan Committee." If the "Retirement Plan Committee" rules that the loan request meets the guidelines as enumerated in the Plan, the request is submitted to the Trustee of the Plan for further action.

29. A Plan participant may also select the manner in which the funds held in his account with the Plan are invested. The Debtor's funds in his Plan account are invested in various money funds and government securities. Each of these investment options was selected by the Debtor as the investment vehicle for his separate account.

30. The Debtor may also designate a beneficiary to receive his interest in the account upon his death.

31. The above findings of fact shall constitute conclusions of law wherever appropriate.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the subject matter and parties to this "contested matter" pursuant to 28 U.S.C. § 1334(b). An objection to the exempt status of property of the estate is a "core proceeding" as defined by 28 U.S.C. § 157(b)(2)(B).

2. Under Bankruptcy Rule 4003(c), the objecting party has the burden of proving by a preponderance of the evidence that the exemptions are not properly claimed.

3. When the Debtor filed his petition for bankruptcy relief, an estate was created comprised of all of the property listed in 11 U.S.C. § 541(a) including both exempt and non-exempt property. The scope of the bankruptcy estate and the property included therein is extremely broad. Subject to certain limited exceptions, the bankruptcy estate includes "all legal or equitable interests of the Debtor in property as of the commencement of the case". 11 U.S.C. § 541(a)(1).

4. As a panel of the Eighth Circuit noted in *In Re Graham*, 726 F.2d 1268, 1271 (8th Cir.1984):

"The new Bankruptcy Code reflects a change in the concept of property of the estate. Unlike the [former Bankruptcy] Act, the Code does not exclude exempt property from the estate. All property of the debtor, even property needed for a fresh start, is included in the estate. After the property comes into the estate, the debtor is then permitted to exempt property needed for a fresh start. *The Code thus incorporates within its scheme the twofold purpose of bankruptcy law, that of converting the estate into cash for distribution among creditors and of providing the debtor with a fresh start."* (emphasis added).

5. One exception to the sweeping scope of the definition of property of the estate as contained in Section 541(a) is Section 541(c)(2). It preserves restrictions on the transfer of a beneficial interest of the Debtor in a trust which is enforceable under applicable non-bankruptcy law and thus prevents such an interest from inclusion in the property of the estate. In other words, property exempted pursuant to Section 522 initially enters the estate, and is subsequently excluded pursuant to the section provisions. By contrast, Section 541(c)(2) property never enters the estate. *In Re Goff,* 706 F.2d 574, 579 (5th Cir.1983).

6. ERISA qualifying pension plans containing anti-alienation provisions are excluded from the definition of property of the estate pursuant to § 541(c)(2) only if they are enforceable under state law as "spendthrift trusts". *In Re Daniel,* 771 F.2d 1352 (9th Cir.1985); *In Re Graham,* 726 F.2d 1268 (8th Cir.1984); *In Re Lichstrahl,* 750 F.2d 1488 (11th Cir.1985); *In Re Goff,* 706 F.2d 574 (5th Cir.1983).

7. The courts of Texas recognize the validity of spendthrift trusts. *Hines v. Sands,* 312 S.W.2d 275 (Tex.Civ.App.—Fort Worth 1958, no writ).[2] In general terms, a spendthrift trust is one in which the right of the beneficiary to future payments of income or capital cannot be voluntarily transferred by the beneficiary or reached by his or her creditors.

8. Under Texas law, it is well settled, however, that a settlor cannot create a valid spendthrift trust for his own benefit. In other words, the settlor and beneficiary cannot be one and the same person. *Bank of Dallas v. Republic National Bank of Dallas,* 540 S.W.2d 499, 501 (Tex.Civ.App.—Waco 1976, writ ref'd n.r.e.); *Glass v. Carpenter,* 330 S.W.2d 530, 534 (Tex.Civ.App.—San Antonio 1959, writ ref'd n.r.e.); *Fewell v. Republic National Bank of Dallas,* 513 S.W.2d 596, 598 (Tex.Civ.App.—Eastland 1974, writ ref'd n.r.e.); *In Re*

---

**2.** The requirements to the validity of spendthrift trusts in Texas are set forth in Section 112.035 of the recently enacted Texas Trust Code.

*Howerton,* 21 B.R. 621, 622 n. 1 (Bankr.N. D.Tex.1982); RESTATEMENT (SECOND) OF TRUSTS § 156.

9. There is a strong public policy against allowing any person to place his property in what amounts to a revocable trust for his own benefit which would be exempt from the claims of his creditors. *Judson v. Witlin,* 640 F.2d 661, 663 (5th Cir.1981).

■ 10. In this case, the plan of Radiology Associates fails the threshold test of a spendthrift trust under Texas law. The Debtor's earnings from services were funneled through the professional corporation and then deposited in the profit sharing plan for his benefit. Even though in form the settlor is Radiology Associates, the Debtor's earnings from his medical practice furnished the corpus of the trust. The Debtor is therefore both the settlor and the beneficiary of the plan. Consequently, the plan is not a spendthrift trust that is enforceable under Texas law. *In Re Ridenour,* 45 B.R. 72, 79 (Bankr.E.D.Tenn.1984).[3]

11. Having found that the plan is not enforceable under Texas law as a spendthrift trust, the Court therefore finds as a matter of fact and law that the Debtor's interest in the plan is property of the estate under Section 541 of the Bankruptcy Code.

12. Because Dr. Brooks has elected to take the Texas rather than the federal exemptions, the Court's inquiry then turns to the question of whether the plan may be exempted under Texas law from the estate. Section 42.002 of the Texas Property Code, however, does not contain a specific exemption for pension plans or other retirement plans. Therefore, the Debtor's interest in the plan is property of the estate and may not be exempted from the estate pursuant to Texas exemption statutes.[4]

■ 13. The First National Bank and Trust of Oklahoma City also contends that a portion of the Debtor's post-petition salary from Radiology Associates constitutes property of the estate pursuant to 11 U.S.C. § 541(a). The First National Bank contends that the Debtor should only be able to exclude from the estate that portion of his compensation package which would equal the amount a radiologist with the same experience as the Debtor would receive in Tarrant County without the guaranteed "meal ticket" afforded the Debtor through his equity interest in Radiology Associates. In support of its position, the First National Bank relies on the opinion of the Ninth Circuit in *In Re Fitzsimmons,* 725 F.2d 1208 (9th Cir.1984). In *Fitzsimmons,* the Ninth Circuit analyzed various components which comprise the income stream of a sole proprietorship and determined that only certain aspects of the income stream are excluded from the estate in Chapter 11 cases. The Court stated:

"... [We] hold that § 541(a)(6) excepts from the proceeds of the estate *only those earnings generated by services personally performed by the individual debtor.* Fitzsimmons is thus entitled to monies generated by his law practice only to the extent that they are attributable to personal services that he himself performs. To the extent that the law practice's earnings are attributable not to Fitzsimmons' personal services but to the business' *invested capital, accounts receivable, goodwill, employment contracts with the firm's staff, client relationships, fee agreements, or the like,* the earnings of the law practice accrue to the estate." (emphasis added).

14. The First National Bank's reliance upon *Fitzsimmons,* however, is misplaced. *Fitzsimmons* dealt with a sole proprietor-

---

**3.** Dr. Brooks cites the Court to *Hines v. Sands,* 312 S.W.2d 275 (Tex.Civ.App.—Fort Worth 1958, no writ) and *Highlands State Bank v. Gonzales,* 340 S.W.2d 828 (Tex.Civ.App.—Waco 1960, no writ) in support of his position that the Plan is not "self-settled". Both cases, however, are readily distinguishable from the instant case in that neither case dealt with an employee who was a major shareholder of the employer corporation. The cases did not discuss the issue of a shareholder indirectly settling his interest in the

net profits of the business into a profit sharing plan.

**4.** Of course, a bankruptcy trustee can acquire no greater rights in property than the debtor possessed. *In Re DeWeese,* 47 B.R. 251, 256 (Bankr.W.D.N.C.1985). Dr. Brooks apparently has no present rights of withdrawal or rights to receive payments out of corpus.

ship rather than an employee of a professional corporation. If Dr. Brooks was the sole employee of the professional corporation of Radiology Associates, such a determination might be necessary. However, Radiology Associates has over 120 employees and is readily distinguishable from a sole proprietorship.

15. In any event, even if this Court were to adopt the reasoning of *Fitzsimmons* in this particular case, the First National Bank and Trust Company did not carry its burden of proof under Rule 4003(c) of providing sufficient evidence for the Court to find what "a radiologist with the same experience as the Debtor would receive in Tarrant County without the guaranteed "meal ticket" afforded the Debtor through his equity interest in Radiology Associates".

16. Accordingly, the Court overrules the objection of The First National Bank to the status of the Debtor's post-petition salary as excludable from the property of the estate. Furthermore, the Debtor's current wages are clearly exempt under Texas law.

17. The above conclusions of law shall constitute findings of fact wherever appropriate.

IT IS SO ORDERED.