Pat S. HOLLOWAY, Plaintiff-Appellee,

v.

HECI EXPLORATION COMPANY EMPLOYEES' PROFIT SHARING PLAN, Defendant-Appellant.

Civ. A. No. CA3–86–2648–D.

United States District Court,
N.D. Texas,
Dallas Division.

Aug. 10, 1987.

Marshall Simmons, Dallas, Tex. and Pat S. Holloway, Giddings, Tex., for plaintiff-appellee.

Robert L. Yeager of Stigall & Maxfield, Dallas, Tex., for defendant-appellant.

## OPINION

FITZWATER, District Judge.

This appeal challenges the bankruptcy court's authority to determine an action to recover benefits from a qualified ERISA profit sharing plan established pre-petition by a title 11 debtor and challenges the bankruptcy court's judgment that plaintiff-appellee did not waive his right to participate in the plan. The court concludes that the bankruptcy court had the authority to enter a final judgment because appellant effectively waived its right to an Article III determination and holds that the findings of the bankruptcy court on the merits are not clearly erroneous. Accordingly, the judgment appealed from is AFFIRMED.

### I.

### BACKGROUND FACTS AND PROCEEDINGS BELOW

Plaintiff-appellee, Pat S. Holloway ("Holloway"), was president, chief executive, and sole active officer of HECI Exploration Company, Inc. ("HECI")[1] from HECI's

---

1. HECI was formerly known as Humble Exploration Company, Inc. (Tr. 18) but changed its name apparently as a result of litigation brought by Exxon Corporation concerning the use of the name "Humble." *See Exxon Corp. v. Humble Exploration Co.,* 524 F.Supp. 450 (N.D.Tex. 1981), *aff'd in part, rev'd in part,* 695 F.2d 96

1974 inception until Holloway was terminated by order of a Texas state court in July 1982.[2] HECI was formed to engage in the exploration and development of oil and gas properties. In 1978, Holloway decided to establish the HECI Exploration Company Employees' Profit Sharing Plan (the "Plan") as an employee morale booster. The Plan was to be funded with overriding royalty interests in four prospects that HECI was engaged in drilling and developing. In 1978 and early 1979, Holloway caused assignments of such overriding royalty interests to be made to the Plan as well as to himself, his then-wife, and his children. Holloway and HECI treasurer, Dean Johnson ("Johnson"), acted as Plan co-trustees. In November 1979, HECI and Holloway, individually, filed voluntary chapter 11 bankruptcy petitions. The HECI case was later converted to chapter 7.

In June 1984, Johnson, acting as Plan co-trustee, proposed to make a partial distribution of Plan benefits to terminated employees, subject to approval of the bankruptcy court. Johnson excluded Holloway from the list of proposed distributees because he believed Holloway was not interested in participating in the Plan.

Holloway filed this ERISA[3] action in Texas state court, seeking to recover from the Plan benefits he contended were due him as a Plan participant and to obtain a declaration that he was entitled to future Plan benefits. By the time of suit, HECI was acting Plan administrator. Through its trustee in bankruptcy, HECI intervened in the state court action and removed it to the U.S. Bankruptcy Court for the Western District of Texas. Thereafter, HECI's trustee moved to transfer venue of the adversary proceeding to the U.S. Bankruptcy Court for the Northern District of Texas for consolidation with the pending HECI chapter 7 proceeding and for trial on the merits. The motion was granted.

Prior to trial in the bankruptcy court, Holloway filed in the district court (Porter, J.) a motion to withdraw reference. Holloway contended that his claim and any funds he might obtain were not the property of his personal bankruptcy estate[4] and that the bankruptcy court lacked jurisdiction under 28 U.S.C. § 1334(a) because the proceeding did not involve property of the estate and was not a case "arising under or related to" a bankruptcy case under 28 U.S.C. § 1334(b). He also averred that the district court had jurisdiction pursuant to 28 [sic] U.S.C. § 1132 and that the proceeding was not a core proceeding. The district court had not ruled on Holloway's motion at the time the adversary proceeding was called for trial by the bankruptcy court.

Holloway also filed in the bankruptcy court a written motion for continuance on the basis of his yet undetermined motion to withdraw reference. At the commencement of trial his counsel urged the motion orally. (Tr. 5). The Plan urged the bankruptcy court to commence trial, arguing, in pertinent part, that whether the proceeding was core or related the bankruptcy court should proceed because the motion to withdraw reference was untimely. (Tr. 6). In response to an inquiry from the bankruptcy court concerning its authority to go forward, the Plan's counsel opined that the proceeding could conceivably be core but was probably related. (Tr. 7). The bankruptcy court concluded that the proceeding

---

(5th Cir.1983), *on remand,* 592 F.Supp. 1226 (N.D.Tex.1984).

2. The state court and related federal litigation is extensively reported, but a fair summary can be found in *Browning v. Navarro,* 743 F.2d 1069, 1071–1073 (5th Cir.1984), *rev'g,* 37 B.R. 201 (N.D.Tex.1983), and in Judge Sanders' opinion, 37 B.R. at 203–06.

3. In his brief (Appellee Br. at 36–37) Holloway characterizes his lawsuit as a "simple breach of contract case." The court holds, however, that this is a federally-preempted field and that, pur-

suant to 29 U.S.C. § 1144(a), Holloway has an exclusive federal cause of action (which, pursuant to 29 U.S.C. § 1132(e)(1), may be maintained in federal or state court) to recover benefits from an ERISA-qualified plan. *See Metropolitan Life Insurance Co. v. Taylor,* —— U.S. ——, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987).

4. *See* note 9, *infra.* Holloway has since claimed that such funds are the property of his bankruptcy estate and, for that reason, that the bankruptcy proceeding was a core proceeding. *See* note 6, *infra.*

was related (Tr. 10), overruled Holloway's motion for continuance, *id.*, and commenced trial.

At the conclusion of trial the bankruptcy judge announced his findings of fact and conclusions of law from the bench (Tr. 140–142), not *proposed* findings and conclusions for district court *de novo* review, and informed counsel that he reserved the right to make further findings and conclusions (Tr. 141) and that counsel for either side would have seven days "to submit proposed orders and proposed findings of fact and conclusions of law." *Id.* at 141–42. The judge then inquired of counsel whether there was "anything further" and, in response to negative indications of counsel, adjourned the proceeding.

The bankruptcy judge received proposed findings and conclusions from both sides and thereafter entered in writing amended findings and conclusions. Although the bankruptcy judge's first conclusion of law was that he had jurisdiction over the parties and subject matter of the adversary proceeding as a "related" proceeding, he nevertheless entered a final judgment. In the judgment, the bankruptcy court held that Holloway was a qualified participant in the Plan and was entitled to receive his interest in the Plan except to the extent that he had waived his right to share in the Plan's June 1984 distribution. The bankruptcy court based its decision on the finding that Holloway, as a HECI employee, was automatically a Plan participant and that Article III, § 3.01 of the Plan required that a participant give notice of his election not to participate in the Plan. Because Holloway had never given any such notice to the Plan administrator, the court held that he never excluded himself from or withdrew from the Plan. The bankruptcy court concluded that Holloway had waived his right to the June 1984 Plan distribution because he was at the time a Plan co-trustee, he did not object to the notice of distribution sent to him, and he did not solicit the bankruptcy court's aid to stop the distribution.

The Plan timely filed its notice of appeal. After the briefs were filed this court conducted oral argument. One of the questions presented in the briefs and at oral argument was whether the bankruptcy court, in a proceeding that it had concluded was a related proceeding rather than a core proceeding, had the authority to enter findings of fact and conclusions of law and a final judgment or whether it had only the authority to enter proposed findings and conclusions which were subject to this court's *de novo* review. In light of the apparent incongruity between the bankruptcy court's conclusion of law that the proceeding was related and its entry of findings and conclusions and a judgment, this court, although not bound by the bankruptcy court's conclusion of law, determined that it should first give the bankruptcy court the opportunity to review the matter. The court remanded the case for the limited purpose of allowing the bankruptcy court to clarify its conclusion of law and to vacate the judgment, if improvidently entered, and file proposed findings of fact and conclusions of law for *de novo* review.

In compliance with the limited remand order, the bankruptcy court filed an order setting forth its basis for entering a final judgment. The order contained additional findings and conclusions, adopted the bankruptcy court's earlier findings and conclusions, and provided in the alternative that if the bankruptcy court had erred in entering a final judgment, its findings and conclusions were filed as proposals for *de novo* review. The bankruptcy court found in its order that, at the inception of trial, it had concluded that the proceeding was related (Supp. Finding No. 4) but that, through inadvertence, it had failed at the conclusion of trial to enter proposed findings and conclusions (Supp. Finding No. 5), and that the parties gave their implied consent for the court to enter a final judgment pursuant to 28 U.S.C. § 157(c)(2) (Supp. Finding No. 7). The bankruptcy court concluded in its order, as a matter of law, that the adversary proceeding was related (Supp. Conclusion No. 1), that the Plan, by its failure to contest the right of the bankruptcy court to sign a judgment, consented to the bankruptcy court's entering findings

and conclusions and a final judgment pursuant to 28 U.S.C. § 157(c)(2) (Supp. Conclusion No. 2), and that the Plan had impliedly waived its right to object to the jurisdiction of the bankruptcy court and the entry by the court of findings and conclusions and a final judgment (Supp. Conclusion No. 3).

The parties have filed supplemental briefs and this appeal is once again before the court for decision.

## II.

## DISCUSSION

### A.

The court first decides whether the proceeding below was a core or non-core related proceeding.[5] The distinction is important, of course, because if it was a core proceeding the bankruptcy judge had the authority to enter the final judgment appealed from and his findings of fact are entitled to the deference of the clearly erroneous rule; if non-core related the bankruptcy judge had the authority only to enter proposed findings and conclusions which, in response to timely objections, this court must consider *de novo* and with respect to which the court can take additional evidence, recall witnesses, or recommit the matter to the bankruptcy judge for further proceedings.

The bankruptcy court concluded that the proceeding was related because Holloway's claim was against the Plan, not against HECI, and thus was a claim involving the administration of the Plan as opposed to a claim "involving the HECI estate as such." (Supp. Conclusion No. 1). The Plan accepts the bankruptcy court's conclusion on its face and argues that, accordingly, this court must conduct a *de novo* review. Holloway argues that the proceeding is core or that the Plan is judicially estopped to deny that it is core and has waived any right to *de novo* review in the district court.[6] The court concludes that the proceeding below was a non-core related proceeding.

Title 28 does not expressly define the term "core proceeding" but instead lists 15 non-exclusive categories in 28 U.S.C. § 157(b)(2)(A)–(O). *In re STN Enterprises, Inc.*, 73 B.R. 470, 479 (Bankr.D. Vermont 1987). Section 157(b)(1) does limit core proceedings to those which arise under title 11 or arise in a case under title 11. Inevitably, the courts have struggled to determine what is a core proceeding and, as might be expected, have adopted both narrow and expansive views. *See In re Atlas Fire Apparatus, Inc.*, 56 B.R. 927, 932 (Bankr.E.D.N.C.1986) (collecting cases). This court holds that core proceedings consist of title 11 cases and proceedings which arise *in* a title 11 case or arise *under* title 11. *See Central Maine Restaurant Supply v. Omni Hotels Management Corp.*, 73 B.R. 1018, 1022 (D.Me.1987). A title 11 *case* is nothing more than the actual peti-

---

5. The Plan does not contest that the adversary proceeding was, at a minimum, a non-core related proceeding. The court has *sua sponte* reviewed the question pursuant to its duty to notice its own and the bankruptcy court's lack of subject matter jurisdiction. The test whether a proceeding is related has been formulated in various ways by the courts. *See Central Maine Restaurant Supply v. Omni Hotels Management Corp.*, 73 B.R. 1018, 1023 (D.Me.1987) (collecting cases). Although the Fifth Circuit does not appear squarely to have adopted a definition, it did hold in *Matter of Paso Del Norte Oil Co.*, 755 F.2d 421, 425 (5th Cir.1985), that a bankruptcy court has jurisdiction to resolve a dispute between third parties if it is impossible to administer completely the estate of the bankrupt without determining the controversy. Although the court holds below that the adversary proceeding was not a core proceeding because it did not *concern* the administration of the HECI estate,

within the meaning of 28 U.S.C. § 157(b)(2), the court nevertheless concludes that the HECI estate cannot be completely administered without resolving Holloway's claim against the Plan. HECI's counsel inferentially conceded as much in his argument to the bankruptcy court. (Tr. 134, 137–38) (HECI exposed to liability claims from existing employees and Plan if Holloway declared a participant).

6. This appeal demonstrates that no legal position is considered unmalleable if it affects a party's right to recover. Until the bankruptcy judge ruled substantially in his favor, Holloway argued at every step that the proceeding was not core and that the district court should decide the case. In light of the bankruptcy judge's substantially favorable judgment, however, Holloway argues that the proceeding was core.

tion whose filing gives rise to subsequent proceedings. *Id.* at n. 11. A proceeding arises *under* title 11 if it states a cause of action created by title 11 or is a matter concerning the administration of the estate with no third party involved. *Id.* Although somewhat more difficult to categorize, a proceeding that arises *in* a title 11 case includes administrative matters, counterclaims by the estate against persons filing claims against the estate, and orders to turn over property of the estate. *Id.* To be a core proceeding an action must have as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment. *Acolyte Electric Corp. v. City of New York*, 69 B.R. 155, 173 (Bankr.E.D.N.Y.1986); *see also Matter of Honeycomb, Inc.*, 72 B.R. 371, 373 (Bankr.S.D.N.Y.1987) (generally, core proceedings have no life of their own absent the bankruptcy petition). Core proceedings are integral to the core bankruptcy function of restructuring debtor-creditor rights and include all necessary aspects of the bankruptcy case. *In re Arnold Print Works, Inc.*, 815 F.2d 165, 167 (1st Cir.1987) (quoting Rep. Kastenmeier (130 Cong.Rec. E 1109) (daily ed. March 20, 1984)).

The instant action, of course, is not a title 11 case. It does not arise *under* title 11 because it neither states a cause of action created by title 11 nor is it a matter concerning the administration of the estate with no third parties involved. The action does not arise *in* a title 11 case because the Plan is not a title 11 debtor.[7] This is an ERISA action which, pursuant to 29 U.S.C. § 1132(a)(1)(B), would have a life of its own absent the HECI bankruptcy.

Holloway argues that the adversary proceeding was a "core" proceeding because it was a matter concerning the administration of the HECI estate. This is so, Holloway

reasons, because: HECI was the administrator of the Plan and Holloway's claim arose after the creation of the estate; the assets of the Plan were part of the property of the HECI estate within the meaning of 11 U.S.C. §§ 541(a)(1) and (d) and the Plan is the only asset of the HECI estate; and the amount of compensation payable to employees of a debtor company is a matter concerning the administration of the estate of a debtor company in bankruptcy. Holloway also contends that the proceeding may be a core proceeding with respect to his own bankruptcy as property of his estate within the meaning of 11 U.S.C. § 541(a)(7), although allegedly exempt for inclusion under 11 U.S.C. § 522 "and otherwise" and not subject to pre-petition claims. Holloway finally contends that the proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) as a proceeding involving the allowance or disallowance of claims against the estate, which Holloway contends includes the Plan by virtue of 11 U.S.C. § 541, or is a core proceeding under 28 U.S.C. § 157(b)(2)(O) because it affects the liquidation of assets of the estate or the adjustment of the debtor-creditor relationship. The court deals with each contention, in turn.[8]

■ The adversary proceeding does not involve the administration of the HECI bankruptcy estate within the meaning of 28 U.S.C. § 157(b)(2)(A); it involves the Plan, a separate legal entity. *See* 29 U.S.C. §§ 1002(3) and (5) ("employee benefit plan" and "employer" defined as separate entities), and 29 U.S.C. § 1132(d)(1) (employee benefit plan may be sued as an entity).

■ The court disagrees that the Plan is shown to be an asset of the HECI bankruptcy estate. In what is known as the "exclusive benefit" rule, ERISA requires that the fiduciary of a plan discharge his

---

**7.** The court recognizes that Holloway is himself a title 11 debtor; however, for the reasons set forth below, the court concludes that the ERISA action is not a core proceeding as to his bankruptcy.

**8.** Holloway argues in the alternative that the Plan is judicially estopped to deny that the adversary proceeding is a core proceeding and has

waived its right to assert that this is a related case and has not timely and specifically objected to the bankruptcy court's findings and conclusions as required by 28 U.S.C. § 157(c)(1). Because the court concludes below that the Plan has waived its right to an Article III judge's determination, the court does not reach these contentions.

duties solely for the benefit of plan participants and beneficiaries and that the assets of an employee benefit plan shall never inure to the benefit of the employer. 29 U.S.C. §§ 1104(a)(1)(A) and 1103(c)(1); *Washington-Baltimore Newspaper Guild Local 35 v. Washington Star Co.*, 555 F.Supp. 257, 259 (D.D.C.1983), *aff'd*, 729 F.2d 863 (D.C.Cir.1984). A statutory exception to the rule is provided by 29 U.S.C. § 1344(d)(1), which provides that any residual assets of a single-employer plan may be distributed to the employer upon plan termination if the liabilities of the plan to participants and their beneficiaries have been satisfied, the distribution does not contravene any provision of law, and the plan provides for such a distribution in these circumstances. 29 U.S.C. § 1344(d)(1)(A)–(C); *International Union, United Automobile Aerospace and Agricultural Implement Workers of America v. Dyneer Corp.*, 747 F.2d 335, 337 (6th Cir.1984); *see* Annot., 83 A.L.R.Fed. 598, 600 (1987). Assuming that this exception applies to the HECI Plan, the record does not reveal that there will be residual assets of the Plan available for return to HECI, the employer. In fact, the argument of HECI's counsel in the bankruptcy court implies that no residual assets will be available. (Tr. 134, 137–38). Because the thrust of ERISA favors the employee, *see* 29 U.S.C. § 1001 (congressional findings and declaration of policy), in the absence of a clear indication in the record that residual assets will be available, the court concludes that they will not be and that the Plan, even in part, is not an asset of the HECI estate.

The court rejects Holloway's contention that the adversary proceeding is a matter concerning the administration of the HECI estate because it pertains to compensation to be paid to employees of a debtor company. Holloway's action is an ERISA action brought pursuant to 29 U.S.C. § 1132(a)(1)(B). It does not involve compensation to be paid to an employee by HECI but rather involves benefits due, and future benefits that may be due, to a beneficiary of an employee benefit plan funded by HECI, an employer.

■ The proceeding is not shown on the present record [9] to be a core proceeding as to Holloway's personal bankruptcy. Holloway has brought this action in his own name. There is no indication that any proceeds he realizes from the suit will be turned over to or accounted for to his bankruptcy estate. *See In re Turner*, 724 F.2d 338, 341 (2d Cir.1983) (holding debtor's conversion action against landlord brought in her own name was not even a non-core related proceeding under such circumstances). There is ample authority for the proposition that one's vested benefits in an ERISA profit sharing plan are property of the bankruptcy estate and may be exempted out pursuant to 11 U.S.C. § 522(d)(10)(E) if needed for a fresh start. *E.g., In re Graham*, 726 F.2d 1268, 1272–73 (8th Cir. 1984); *In re Brooks*, 60 B.R. 155, 159–60 (Bankr.N.D.Tex.1986). The instant adversary proceeding, however, has been filed by Holloway, individually, not by his trustee or by him as a debtor-in-possession, and was removed from state court by the Plan on the theory that the proceeding was related to the HECI bankruptcy estate, not the Holloway bankruptcy estate. It is thus not shown to be core as to his estate.

■ The court rejects the argument that the proceeding is core pursuant to 28 U.S.C. § 157(b)(2)(B) as involving the allowance or disallowance of claims against the HECI estate. This argument is based upon the premise, rejected above, that the Plan is an asset of the HECI bankruptcy estate. The court likewise concludes that the outcome of the proceeding does not govern the liquidation of an estate asset, within the reach of 28 U.S.C. § 157(b)(2)(O), or the adjustment of the debtor-creditor relationship with respect to HECI.

---

**9.** Although he had not claimed an interest in the Plan during the early years of his personal bankruptcy, Holloway did amend his B–2 bankruptcy schedule in November 1984 to state that he may have an interest in the Plan (DX17). In his motion to withdraw reference filed in the district court on April 29, 1986, however, Holloway contended that his claim, and any funds received in the event he was successful, "are not property of the estate pursuant to Section 541."

It must be remembered that Holloway's action is brought pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B). ERISA permits suits to recover benefits only against the plan as an entity. *Id.* and § 1132(d). *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324–25 (9th Cir.1985). The suit was filed in Texas state court by Holloway, individually. He intentionally did not sue the plan fiduciaries in order to avoid the exclusive federal jurisdiction provisions of 29 U.S.C. § 1132(e)(1), (Appellee Br. at 37), which left only the Plan as a defendant. The suit was framed so as not to invoke the core proceeding powers of the bankruptcy court under 28 U.S.C. § 157(b)(1) and the court holds, accordingly, that it is not a core proceeding.

### B.

■ Having decided that the adversary proceeding was not a core proceeding, the court must decide whether the Plan effectively waived its right to an Article III determination so that the bankruptcy court properly entered a final judgment.[10]

The Supreme Court re-affirmed, in *Commodity Futures Trading Commission v. Schor*, —— U.S. ——, 106 S.Ct. 3245, 3257, 92 L.Ed.2d 675 (1986), that a party can waive its right to an Article III judge's determination of a claim. In *Schor*, the plaintiff, Schor, commenced a reparations proceeding before the Commodity Futures Trading Commission ("CFTC") against a commodity futures broker and one of its employees. The broker commenced a diversity action in federal court to recover a debit balance in Schor's trading account. 106 S.Ct. at 3250. Schor counterclaimed in the district court action but moved on two separate occasions to dismiss or stay the action, arguing that the CFTC reparations proceeding would fully resolve and adjudicate all the rights of the parties to the transactions which were the subject matter of the district court action. *Id.* at 3250–51. The

The broker voluntarily dismissed the district court action and presented its debit balance as a counterclaim in the CFTC reparations action. *Id.* at 3251. The CFTC administrative law judge ruled against Schor. Then, for the first time, Schor challenged the CFTC's statutory authority to adjudicate the broker's counterclaim. *Id.*

The Supreme Court held that Schor effectively waived his right to a full trial before an Article III court because he demanded that the broker proceed on its counterclaim before the CFTC rather than in district court "and was content to have the entire dispute settled in the forum he had selected until the ALJ ruled against him on all counts; it was only after the ALJ rendered a decision to which he objected that Schor raised any challenge...." *Id.* at 3257.

The facts of the instant case present a closer question than do those in *Schor*. Unlike *Schor*, the Plan's actions in the present case do not suggest that it uniformly insisted upon the bankruptcy court's entering a final judgment on the merits. The Plan's actions in removing the Texas state action to bankruptcy court and in insisting that the motion to withdraw reference was untimely (Tr. 6) were plausibly the actions of a party that held the view that the bankruptcy court proceeding to follow would be non-core related. Although the Plan's counsel informed the bankruptcy judge that the proceeding "could conceivably be a core matter," he also stated his feeling that it was "a related proceeding" and that the bankruptcy court could itself consider whether there was cause to send it to the district court. (Tr. 7). The Plan's counsel informed the bankruptcy judge that the Plan had argued in the district court, in response to Holloway's motion to withdraw reference, that the proceeding was related but that the cases could be liberally read to hold that the proceeding was core. (Tr. 8). The

---

10. The bankruptcy court has entered findings of fact and conclusions of law on the question whether the Plan waived its right to an Article III determination. This court holds that it must review these findings and conclusions *de novo* since it involves a matter of the bankruptcy court's authority. Otherwise, this court would be giving the bankruptcy court the deference of the clearly erroneous standard of review before determining that the bankruptcy court was entitled to such deference.

actions of the Plan, through the end of trial, indicate only the plain desire that the suit be tried in the bankruptcy court and that the trial commence without further delay, whether the bankruptcy court itself determined the matter or simply proposed a ruling. *See id.*

■ Where the Plan waived its right to an Article III judge's determination, however, was at the post-trial stage. The bankruptcy judge had stated on the record prior to trial, and after overruling Holloway's motion for continuance, his finding that the case was a "related proceeding." (Tr. 10). Nevertheless, at the conclusion of trial he announced his "findings of fact and conclusions of law" (Tr. 140–142), not *proposed* findings and conclusions, after which he allowed either side seven days to submit proposed orders and findings of fact and conclusions of law, (Tr. 141–42), and invited counsel's comments. The Plan's counsel did not object to the entry of findings and conclusions. (Tr. 142).

At that juncture, the Plan apparently believed it could still prevail in the bankruptcy court. Within the seven days allowed, it filed proposed findings of fact and conclusions of law which, if adopted by the bankruptcy court, would have supported a judgment in favor of the Plan.[11] This is not the action of a party who believed it had already lost in the bankruptcy court. The bankruptcy judge, although continuing to adhere to his original bench ruling, adopted certain of the Plan's proposed findings and conclusions in his amended findings and conclusions signed on August 7, 1986. At the time the bankruptcy judge entered his amended findings and conclusions he sent to counsel a letter in which he informed Holloway's attorney to prepare a form of judgment. The Plan did not, however, bring to the bankruptcy judge's attention the statutory infirmity to his entering a final judgment. The Plan did not file timely objections to the findings and conclusions, as required by 28 U.S.C. § 157(c)(1) and Local Bankruptcy Rule 9033(b)[12] when a party desires to obtain *de novo* review of a bankruptcy court ruling.

The court concludes that the conduct of the Plan post-trial evidences an effective waiver of the Plan's right to an Article III judge's *de novo* determination of the present case.[13]

### C.

Having negotiated considerable procedural headwinds, the court now arrives at the merits of the appeal. The court observes at the outset that the parties asked the bankruptcy court to decide the merits of Holloway's claim on the basis of the wrong legal standard.

■ It is settled in this circuit that the denial of a claim for ERISA profit-sharing plan benefits is to be reviewed in the trial court in the first instance, and on appeal, under the arbitrary and capricious standard of review. *Dennard v. Richards Group, Inc.,* 681 F.2d 306, 313 (5th Cir.1982) (profit-sharing plan case). According to the clear weight of authority, the actions of a

---

11. The court rejects the Plan's argument (Appellant Br. at 16) that in these proposed findings and conclusions specific objections were made to the bankruptcy court's bench findings and conclusions of law. This court's review of the proposal reflects that they urged different findings and conclusions than those announced from the bench but they did not contain "objections" in unequivocal terms.

12. Local Bankruptcy Rule 9033(b):
   *Objections: Time for Filing.* Within 10 days after being served with a copy of the proposed findings of fact and conclusions of law a party may serve and file with the Clerk of the Bankruptcy Court written objections which identify the specific proposed findings or conclusions objected to and state the grounds for such objection. A party may respond to another party's objections within 10 days after being served with a copy thereof. A party objecting to the bankruptcy judge's proposed findings or conclusions shall promptly arrange for the transcription of the record, or such portions of it, as all parties may agree upon or the bankruptcy judge deems sufficient unless the district judge otherwise directs.

13. The court also holds that the Plan waived any right it may have had under 28 U.S.C. § 157(d) to a *de novo* determination. Holloway clearly urged the district court to withdraw the reference on § 157(d) grounds and urged the bankruptcy judge to do likewise. (Tr. 8–9). The Plan opposed both requests. (Tr. 8).

trustee in the administration of a pension plan[14] must be sustained as a matter of law unless plaintiff can prove such activities have been arbitrary or capricious. *Id.; citing Bayles v. Central States, Southeast and Southwest Areas Pension Fund*, 602 F.2d 97, 99 & 100 n. 3 (5th Cir.1979). Such a standard prevents excessive judicial intervention in trust operations. *Dennard*, 681 F.2d at 313.

■■■■ The arguments of the parties, however, both in the bankruptcy court and on appeal to this court, have been based upon the Texas common law of waiver.[15] Neither party advised the bankruptcy court, nor do they now advise this court, that Holloway's ERISA action to recover benefits and to obtain declaratory relief is governed by federal substantive law. Where an issue is not raised in the trial court or in the appellate court briefs or at oral argument, the appellate court will not address it. *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 488 n. 7 (5th Cir.1984). The court concludes that the Plan has waived any error that the bankruptcy court may have committed in applying the Texas common law.

■■■ Moreover, even where a trial court applies the incorrect substantive law, if the parties do not contest the application the trial court's error is immaterial. *Casio, Inc. v. S.M. & R. Co.*, 755 F.2d 528, 531 (7th Cir.1985). This is so because parties can, within broad limits, stipulate the substantive law to be applied to their dispute and can, by not objecting to the trial court's application of the substantive law to their dispute, be deemed to have so stipulated to its application. *Id.* Accordingly, the court will decide this appeal in accordance with Texas law.

The Plan argues that the evidence supports a finding that Holloway expressly or impliedly waived his right to participate in the Plan. In its brief, and at oral argument, the Plan pointed to seven acts or failures to act that it contends evidence Holloway's intent to waive his Plan rights. The bankruptcy court found that Article III, § 3.01 of the Plan required that a Plan participant give written notice of his intent not to participate and that Holloway did not follow the procedure in § 3.01 to exclude himself from the Plan. The bankruptcy court considered and analyzed the evidence that the Plan relied upon in support of its waiver arguments and chose substantially[16] to reject it.

Texas embraces the classic definition that waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming the right. *Jackson v. National Flood Insurers Assn.*, 398 F.Supp. 1383, 1388 (S.D.Tex.1974). To establish abandonment or waiver under Texas law, there must be proof of intent to relinquish a known right. *Palmer v. Fuqua*, 641 F.2d 1146, 1160 (5th Cir.1981). A waiver of rights may result where a party demonstrates intentional relinquishment of rights of which the party has full knowledge. *Regional Properties, Inc. v. Financial & Real Estate Consulting Co.*, 752 F.2d 178, 183 (5th Cir.1985). Waiver is largely a question of intention and may be either express or implied. *Roos v. Lassiter*, 188 F.2d 427, 430 (5th Cir.), *cert. denied*, 342 U.S. 876, 72 S.Ct. 166, 96 L.Ed. 658 (1951). Implied waiver must be evidenced by clear, unequivocal, and decisive acts from which can be inferred an intent to relinquish the right in question. *Young v. Amoco Production Co.*, 610 F.Supp.

---

**14.** In *Dennard* the plan was, as noted, a profit-sharing plan. 681 F.2d at 309. *See also Ganze v. Dart Industries, Inc.*, 741 F.2d 790 (5th Cir. 1984) (applying standard to profit-sharing trust claim).

**15.** One of the issues the Plan listed in its brief is whether Holloway is estopped from claiming participation in or benefits under the Plan. (Appellant Br. at 2). In the body of the brief, however, the Plan has focused almost exclusively upon waiver, *id.* at 20–28, and has made only

sporadic and passing references to estoppel, *id.* at 21, 24. The court concludes that the waiver question is the only one preserved for review. *See McGruder v. Necaise*, 733 F.2d 1146, 1148 (5th Cir.1984) (appellate court will not consider matter not briefed).

**16.** The bankruptcy court did, as noted above, find and conclude that Holloway had waived his right to the June 1984 Plan distribution made to terminated HECI employees.

1479, 1489 (E.D.Tex.1985), *aff'd*, 786 F.2d 1161 (5th Cir.1986). Waiver by implication will be applied only to prevent fraud or inequitable consequences. *Stowers v. Harper*, 376 S.W.2d 34, 40 (Tex.Civ.App.—Tyler 1964, writ ref'd n.r.e.)

■ As is clear from a reading of Texas law, waiver is principally an issue of the intent of the party possessing the right. *Young*, 610 F.Supp. at 1489. In Texas, questions such as intent are considered inherently to be for the trier of fact. *Kolb v. Texas Employers' Insurance Association*, 585 S.W.2d 870, 873 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.) (cases involving intent, reliance, reasonable care, uncertainty and the like are inherently for judge or jury). The bankruptcy court, as trier of fact, considered the testimony of the witnesses and the documentary evidence and chose to believe that Holloway, at most, straddled the fence regarding his intentions and *possibly* intended not to participate and to waive participation but that Holloway never actually intended to relinquish his rights.

The bankruptcy court's waiver findings, and the inferences to be drawn therefrom, are reviewed by this court in accordance with the clearly erroneous standard. *In re Ambassador Park Hotel, Ltd.*, 61 B.R. 792, 798 (N.D.Tex.1986); Fed.R.Bankr.P. 8013. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Anderson v. City of Bessemer City, North Carolina*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Even if this court were convinced that it would decide the case differently on the same record, the clearly erroneous standard does not entitle this court to reverse the findings of the bankruptcy court. *See id.* If the trier of fact's account of the evidence is plausible in light of the record viewed in its entirety, the appellate court may not reverse it. *Id.* at 573–74, 105 S.Ct. at 1512. Where, as here, there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous. *See id.* at 574, 105 S.Ct.

at 1512. This court's review of the record and of the bankruptcy court's fact findings reflects that the bankruptcy court did not clearly err in finding that Holloway did not waive his rights to participate in the Plan.

### D.

■ Holloway argues in his reply brief (Appellee Rep.Br. at 18–20) that the bankruptcy judge erred in determining that Holloway waived his right to a June 1984 Plan distribution. He asks this court to "reform the conclusion and judgment of the Bankruptcy Court insofar as it determined that Holloway had waived his right to participate in the Plan to the extent of the 1984 distribution." *Id.* at 20.

Fed.R.Bankr.P. 8002(a) provides that, when a timely notice of appeal is filed by a party, any other party may file a notice of appeal within ten days of the date on which the first notice of appeal was filed. Holloway did not file a notice of appeal and this court lacks jurisdiction to consider his attack on the judgment. *See Ambassador Park Hotel*, 61 B.R. at 796; *see also Colvin v. Dempsey-Tegeler & Co.*, 477 F.2d 1283, 1292 (5th Cir.1973) (Fed.R.App.P. 4(a) case) (appellee cannot question trial court's judgment in the absence of the filing of a notice of cross-appeal).

AFFIRMED.