**CENTRAL MAINE RESTAURANT SUPPLY, Plaintiff,**

v.

**OMNI HOTELS MANAGEMENT CORPORATION, Defendant.**

**Civ. No. 87–0068 P.**

United States District Court, D. Maine.

May 18, 1987.

</center>

Elliott L. Epstein, Isaacson, Hark & Epstein, Lewiston, Me., for plaintiff.

Jeffery D. Curtis, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me., for defendant.

## MEMORANDUM OF DECISION AND ORDER

### GENE CARTER, District Judge.

Central Maine Restaurant Supply, Inc. ("CMRS") has brought suit against Omni Hotels Management Corporation, formerly known as Dunfey Hotels Corporation ("Dunfey"), for payment of $24,487.23.[1] CMRS seeks payment based upon two theories: payment on an account annexed, *see* 16 M.R.S.A. § 355 (1964); and payment for goods sold and delivered.

The goods in question were allegedly sold and delivered during January and February of 1986. At that time, Dunfey was acting as agent for Sugarloaf Mountain Corporation ("Sugarloaf") and its wholly owned subsidiary, Mountainside (collectively, "Sugarloaf"). *See* Management Agreement Between Dunfey Hotels Corporation and Sugarloaf Mountain Corporation and Mountainside Dated June 20, 1985, art. 23.-6, at 40–41 [hereinafter cited as Management Agreement]. A factual dispute apparently exists as to whether the agency relationship was disclosed or undisclosed.[2] On March 23, 1986, Sugarloaf filed a petition for reorganization under title 11, chapter 11 of the United States Code. The chapter 11 proceedings were referred to the United States Bankruptcy Court for the District of Maine, pursuant to 28 U.S.C. § 157(a) (Supp.III 1985). The Bankruptcy

---

1. Plaintiff originally filed suit in State of Maine District Court, District Eight, Division of Southern Androscoggin. Pursuant to Defendant Dunfey's petition, the case was removed to this Court. Federal jurisdiction is based on diversity of citizenship (Plaintiff is a Maine corporation with its principal place of business in Maine; Defendant is a Delaware corporation with its principal offices in the state of New Hampshire), with an amount in controversy in excess of $10,000.00.

2. *Compare* Affidavit of Richard Spugnardi, President of CMRS ("At all times in my dealings with the Defendant, I made it clear I would only sell on credit to Omni/Dunfey, and representatives of the company assured me that Omni/Dunfey would be the party responsible for the bills. Invoices were made out to Omni/Dunfey and deliveries were signed for by representatives of Omni/Dunfey.") *with* affidavit of Robert H. Turner, Vice President for Finance and Administration for Sugarloaf and Mountainside ("After the [Management Agreement] became effective, I spoke with a representative of CMRS and informed him that future orders for restaurant supplies would be placed through Dunfey and that payments would be made through Dunfey.") *See Saco Dairy Co. v. Norton,* 140 Me. 204, 208, 35 A.2d 857 (Me.1944) (whether disclosure of agency was made depends upon the facts, and unless only one inference can legally be drawn from the facts, the question must be decided by the trier of facts).

While Spugnardi's statement expresses a reasonably clear intent that Dunfey (and not Sugarloaf) would be held liable for CMRS accounts, Turner's statement is ambiguous. It is not clear whether Turner was simply disclosing the agency relationship to CMRS, or whether Turner intended to enter into an agreement that would bind Sugarloaf, rather than Dunfey, on any debts owed by CMRS. Resolution of the ambiguity one way or the other leads to different legal results. The general rule in a disclosed agency situation is that the principal, *and not* the agent, is responsible for the authorized acts of the agent. *McKeen v. Boothby,* 152 A. 53, 129 Me. 324 (1930). One exception to this general rule is that a third party may agree with the agent that only the agent is to be bound. *Restatement (Second) of Agency* § 146; *see also id.* § 145, Comment *f.* Another exception exists to the extent that courts deem it appropriate to impose joint and several liability on the agent and principal. At least one Maine case has held that joint and several liability is appropriate under certain circumstances. *Pelletier v. Dwyer,* 334 A.2d 867, 873 (Me.1975) (in action by purchaser against vendor and real estate broker to recover down payment, joint and several liability appropriate where broker did not establish that he had paid deposit over to vendor. "Whether one defendant shall indemnify the other, or complain against him in a subsequent action, is of no concern to us here. Both defendants are properly subject to liability, and the plaintiff should be made whole." *Id.* at 873.)

Although not necessary to the resolution of the pending motions, the Court suggests that if the agency relationship in this case was disclosed, joint and several liability may be appropriate. It appears to be uncontroverted that Dunfey signed for and received goods from CMRS; it is also uncontroverted that Dunfey was acting as Sugarloaf's agent. It would appear, then, that both Dunfey and Sugarloaf are properly subject to liability, "and the plaintiff should be made whole."

Court confirmed a Joint Plan of Reorganization on April 2, 1987.[3]

Presently before this Court are two motions. First, Sugarloaf moves pursuant to Rule 24 of the Federal Rules of Civil Procedure to intervene as of right, or, alternatively, for permissive intervention. Second, Defendant Dunfey moves with Sugarloaf for referral of the case at bar to the Bankruptcy Court. For the reasons set forth below, the Court denies both motions.

## I. THE MOTION TO INTERVENE

■ The Federal Rules of Civil Procedure provide for two types of intervention: intervention as of right, Fed.R.Civ.P. 24(a);[4] and permissive intervention, Fed.R. Civ.P. 24(b).[5] Intervention as of right requires the would-be intervenor to meet a threefold test: the would-be intervenor must establish (1) that it has an "interest relating to the property or transaction that is the subject of the action"; (2) that the "disposition of the action may as a practical matter impair or impede [its] ability to protect that interest"; and (3) that the existing party is not able to adequately represent the interests of the would-be intervenor. 7C C. Wright & A. Miller, *Federal Practice and Procedure* § 1908, at 262 [hereinafter cited as Wright & Miller]. Permissive intervention lies largely within the discretion of the court. *See id.* § 1913, at 376–77.

The moving party (*i.e.*, the would-be intervenor) must establish that intervention

is proper. To that end, Rule 24 provides that "[t]he motion shall state the grounds [for intervention] and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought." Fed.R.Civ.P. 24(c). *See also* 7C Wright & Miller § 1914, at 410–11. The purpose of subdivision c of Rule 24 is to enable the court to determine whether the moving party has the right to intervene and, if not, whether permissive intervention should be granted. *See, e.g., Miami County Nat'l Bank v. Bancroft*, 121 F.2d 921, 926 (10th Cir.1941).

■ Having considered the submissions of Sugarloaf, the Court determines that it has insufficient information on which to decide the merits of the motion in favor of intervention.

The most glaring procedural deficiency is Sugarloaf's failure to include a pleading setting forth its defense. Absent such a pleading or other equivalent information, the Court cannot evaluate whether Sugarloaf's legal position justifies the intervention, and CMRS is left to guess the nature of Sugarloaf's claims. *See International Bhd. of Teamsters, Local 523 v. Keystone Freight Lines, Inc.*, 123 F.2d 326, 328 (10th Cir.1942) (purpose of Rule 24(c) is to inform court of grounds upon which intervention is sought and to inform parties against whom some right is asserted or relief sought so that they might be heard before

---

**3.** The Bankruptcy Court retains jurisdiction to the extent necessary to oversee execution of the Confirmation Plan. *See* Joint Plan of Reorganization for Sugarloaf Mountain Corporation and Mountainside Dated February 24, 1987, art. XIV [hereinafter cited as Reorganization Plan.] *See also, e.g., In re Frank Meador Buick, Inc.*, 59 B.R. 787 (Bankr.W.D.Va.1986); *General Motors Acceptance Corp. v. Fortner Oilfield Services, Inc. (In re Fortner Oilfield Services, Inc.)*, 49 B.R. 9 (Bankr.D.Tex.1984); *Lombard-Wall, Inc. v. New York City Housing Development Corp. (In re Lombard-Wall, Inc.)*, 44 B.R. 928 (Bankr.D.N.Y. 1984), *confirmed in part*, 48 B.R. 986 (S.D.N.Y. 1985).

**4.** Rule 24(a) provides:
  Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the

property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
The case at bar does not involve an unconditional statutory right to intervene. Therefore, intervention as of right must be invoked, if at all, under Rule 24(a)(2).

**5.** Rule 24(b) provides, in pertinent part:
  Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.…
  In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

the court rules on the motion). Even if Sugarloaf were to incorporate and adopt *Dunfey's* pleadings in the case, Sugarloaf's showing would still be insufficient to support intervention because Dunfey has simply denied the allegations in CMRS' Complaint without setting forth any affirmative defenses. The Court therefore has no way to evaluate Sugarloaf's defense to the claim brought by CMRS, and thus cannot accurately evaluate Sugarloaf's interest in the case at bar.[6]

A second and related deficiency is that Sugarloaf's motion to intervene and memorandum in support thereof do not adequately state the grounds for intervention. Sugarloaf's allegation that it is ultimately liable for any indebtedness incurred by Dunfey because Dunfey was acting as Sugarloaf's agent does not go far enough to explain Sugarloaf's position. For example, Sugarloaf would not be liable to CMRS (and thus would have no interest in the instant case), if the agency relationship was undisclosed and CMRS had elected to proceed against the agent, Dunfey. *See Poretta v. Superior Dowel Co.,* 153 Me. 308, 318, 137 A.2d 361 (Me.1957), citing *Libby v. Long,* 127 Me. 293, 296, 143 A. 66 (Me.1928) (*"either* the agent *or* an undisclosed principal is liable at the election of a creditor")￼(emphasis added). *See also* Restatement (Second) of Agency § 147, Comment *c*; § 210 (1958).[7] Even though Sugarloaf, under the Reorganization Plan, agrees to indemnify Dunfey for claims that would cover CMRS' claim in the case at bar,[8] the Plan does nothing more than give Dunfey a cause of action against Sugarloaf. If Dunfey chooses to bring that cause of action, Sugarloaf would then have an opportunity to defend the claim. Sugarloaf alleges, without explaining, that Dunfey cannot adequately represent Sugarloaf's interest. It may well be that an opportunity to defend later will not adequately protect Sugarloaf's interests in the *pending* case; Sugarloaf, however, has not explained how that is so, and it is not for the Court to speculate on the matter.

Finally, Sugarloaf has not established that the Court would have jurisdiction over Sugarloaf. "[I]ntervention still must be denied, though all the requirements of Rule 24 are met, if the federal court cannot take jurisdiction with regard to the intervenor." 7C Wright & Miller § 1917, at 459. In its present posture, the Court's jurisdiction of this case is based on diversity of citizenship. Intervention by a Maine defendant[9] would destroy the complete diversity required for federal jurisdiction. *See id.* at 460. It may be that Sugarloaf can invoke other jurisdictional grounds, but it has failed to do so thus far.

A court should not necessarily deny a motion to intervene because of technical procedural defects. *See id.* § 1914, at 411–16. In the present case, however, the position presented by Sugarloaf's motion is simply too vague to allow the Court to conclude that intervention is proper. The motion to intervene is therefore denied.

## II. THE MOTION FOR REFERRAL TO BANKRUPTCY COURT

Having denied Sugarloaf's motion to intervene, the Court proceeds to discuss what must now be considered as Dunfey's motion to refer this case to the Bankruptcy Court.

In *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the

---

6. Indeed, it appears to the Court that the real dispute is not *whether* CMRS should be paid the amount it seeks, but rather *who* should pay it. The Reorganization Plan seems to contemplate that Sugarloaf will pay an amount approximating the relief sought in this case for the unsecured claims of Dunfey. *See* Reorganization Plan, art. III, at 11 ("Class 14 claims not impaired"). If Sugarloaf does not dispute its obligation to pay the debt owed to CMRS, the Court suggests that Sugarloaf should pay that amount and that this case should be dismissed.

7. A disclosed agency situation results in different legal consequences. *See supra* note 2.

8. Reorganization Plan, art. III, at 11 ("Class 14 claims unimpaired").

9. It appears obvious to the Court that Sugarloaf seeks to intervene as a defendant; however, Sugarloaf has failed to state that position explicitly. *See* Fed.R.Civ.P. Official Form 23 ("Motion to intervene *as a defendant* ") (emphasis added).

Supreme Court held unconstitutional the broad grant of jurisdiction to bankruptcy courts made under the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598 (1978). In the wake of the *Marathon* decision, Congress passed the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353 (1984) ("1984 Amendments"). Under the 1984 Amendments, "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). This Court has entered an order referring all such proceedings to the bankruptcy judges of this district.[10]

A bankruptcy judge may "hear and determine," and "enter appropriate orders and judgements" in "all cases under title 11 and all core proceedings arising under title 11 or arising in a case under title 11." 28 U.S.C. § 157(b)(1). As to "related" proceedings, however, the bankruptcy judge (absent consent of the parties) is only to submit proposed findings of fact and conclusions of law to the district court; the district court then enters any final order or judgment "after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

In deciding whether to refer a case to the bankruptcy court, a district court must therefore determine whether that case is a core proceeding or a noncore, related proceeding.

Core proceedings are those which "arise in title 11 cases or arise under title 11." 1 L. King, *Collier on Bankruptcy* ¶ 3.01, at 3–34 (15th ed. 1987) [hereinafter cited as *Collier*].[11] Section 157(b)(2) contains a nonexclusive list of core proceedings. Sugarloaf invokes three of those provisions in arguing that this case should be referred: section 157(b)(2)(A) (matters concerning the administration of the estate); section 157(b)(2)(B) (allowance or disallowance of claims against the estate of Sugarloaf); and section 157(b)(2)(O) (proceedings affecting the adjustment of the debtor-creditor relationship of Sugarloaf). Motion for Referral to the United States Bankruptcy Court and Memorandum in Support Thereof, at 4.

■ The Court is satisfied that the case now before it is not a core proceeding. The case does not "arise under" title 11; rather, it arises under the law of the State of Maine.[12] Furthermore, the case does not "arise in" a case under title 11, because the case does not arise in the context of a bankruptcy proceeding. Sugarloaf is not even a party to this case; the controversy as presently postured is a dispute between CMRS and Dunfey, neither of whom is in bankruptcy. As discussed above, the con-

10. *See* Order Referring Bankruptcy Proceedings (D.Me. Aug. 1, 1984), which provides:

In accordance with the Bankruptcy Amendments and Federal Judgeship Act of 1984, it is ORDERED, that all cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11 are referred to the bankruptcy judges of this district who are hereby directed to proceed to exercise the jurisdiction hereby delegated to them.

11. A title 11 "case" is nothing more than the actual petition whose filing gives rise to subsequent proceedings. *Collier* 57 3.01, at 3–20. A proceeding "arises under" a title 11 case if it states a cause of action created by title 11 or is a matter concerning the administration of the estate with no adverse third party involved. *Id.* at 3–23. "Arising in" proceedings are somewhat more difficult to categorize, but include "admin-

istrative matters" (*e.g.*, allowance and disallowance of claims, determining dischargeability of debt, or confirmation of plans); counterclaims by the estate against persons filing claims against the estate; or orders to turn over property of the estate. *See id.* at 3–27; 28 U.S.C. § 157(b)(2).

12. "[T]he fact that a claim in a bankruptcy matter raises issues of state, rather than federal, law does not by itself determine that it is non-core, rather than core." *Arnold Print Work, Inc. v. Apkin (In re Arnold Print Works, Inc.)*, 815 F.2d 165, 169 (1st Cir.1987) (holding that bankrupt's legal action to collect "post-petition" debt brought as part of efforts to liquidate the estate, is "core" proceeding). *See also* 28 U.S.C. § 157(b)(3). Nevertheless, as set out in the text, the Court finds no basis for considering the present case to be a core proceeding.

firmed Reorganization Plan will apparently give Dunfey a cause of action against Sugarloaf should CMRS prevail. However, the fact that the present proceeding could result in the creation of a cause of action in Dunfey against Sugarloaf *if* CMRS prevails hardly renders that proceeding a "matter concerning the administration of the estate," nor does it constitute an "allowance of a claim against the estate of Sugarloaf," nor does it affect the debtor-creditor relationship of Sugarloaf. Quite simply, the present case has *no* effect of the estate of Sugarloaf. Because the present proceeding does not "arise under" title 11 and does not "arise in" a case under title 11, it is not a core proceeding and cannot be referred as such to the Bankruptcy Court.

█ The Court is also satisfied that the case now before it is not a "related" proceeding. The concept of relatedness, stated in basic terms, requires some nexus between the purported related proceeding and the title 11 case. Courts have struggled to define how strong that nexus must be; the resulting confusion reflects the competing concerns addressed in the *Marathon* decision: on the one hand, the constitutional concern that the essential attributes of judicial power remain vested in article III judges; on the other hand, the practical concern that bankruptcy courts be given a comprehensive jurisdictional grant to allow the efficient and expeditious disposition of all matters connected with the bankruptcy estate.

The test for relatedness has been formulated in various ways. One formulation at the strict end of the spectrum states that a proceeding is related if it is "sufficiently involved with the case to have a definite effect upon the debtor's estate." *Zweygardt v. Colorado Nat'l Bank*, 52 B.R. 229, 234 (Bankr.D.Colo.1985). A second formulation, far at the other end of the spectrum, would find relatedness based merely upon "factual overlap." *Unique Catering, Inc. v. American Broadcasting Companies, Inc.*, 49 B.R. 367, 369 (S.D.N.Y.1985). A position closer to the middle holds that a

proceeding is related if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984) (citations omitted). *See also Medina-Figueroa v. Heylinger*, 63 B.R. 572, 574 (D.P.R.1986) (applying the *Pacor* standard and holding debtor's claim for malpractice a "related" proceeding).

The *Pacor* formulation, although less expensive than a "factual overlap" test would seem to be, is still a rather broad formulation. *Pacor* went on to hold, however, that an action between an asbestos distributor (Pacor) and the plaintiffs (the Higgins) in a products liability suit was not sufficiently "related" to the bankruptcy case of the asbestos manufacturer (Johns-Manville) to warrant referral. The Third Circuit explained that "the primary action between Higgins and Pacor would have no effect on the Manville bankruptcy estate, and therefore is not 'related to' bankruptcy within the meaning of [28 U.S.C.] section 1471(b). At best, it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville." *Pacor*, 743 F.2d at 995. The court went on to say that "any judgment received by the plaintiff Higgins could not itself result in even a contingent claim against Manville, since Pacor would still be obligated to bring an entirely separate proceeding to receive indemnification." *Id.*

Admittedly, it may be argued that the case at bar presents a somewhat stronger case for relatedness than did *Pacor* because of the indemnification provision in the Reorganization Plan.[13] Even with the indemnification provision, however, Dunfey would apparently still have to file a claim against Sugarloaf; nothing in the Reorganization Plan suggests an automatic flow of funds from Sugarloaf to Dunfey in the event CMRS succeeds against Dunfey. On the contrary, the indemnification provision expressly lists two conditions that Dunfey must satisfy to ensure indemnification: first, Dunfey must "promptly notify[ ] Su-

---

**13.** *See supra* note 8.

garloaf of the assertion of any claim"; and second, Dunfey must "tender[ ] any such claim to the Debtors for defense and payment, if requested." Reorganization Plan, art. III, at 11. The indemnification provision also secures the funds for only six months after the date of confirmation. *Id.* In short, the indemnification provision is subject to a number of conditions that render Dunfey's right to indemnification uncertain.

Furthermore, the Court cannot see that referral would result in any significant savings of judicial resources. The issue to be litigated does not require any special expertise in bankruptcy; rather, it involves issues of state law clearly within the competence of this Court. Because the case does not constitute a core proceeding, this Court would, absent the parties' consent, be required to enter any final order and judgment. There is, therefore, little if anything to be gained in terms of judicial economy by referring this case to the Bankruptcy Court.

The motion for referral is denied.

### III.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the motion of Sugarloaf and Mountainside to intervene and the motion of Dunfey for referral to bankruptcy be, and hereby are, DENIED.