Margaret HOHL, Appellant,

v.

Charles BASTIAN, Appellee.

Civ. A. No. 01–1828.
Adversary No. 01–2270.
Bankruptcy No. 0141593.

United States District Court,
W.D. Pennsylvania.

March 8, 2002.

---

Robert J. Ridge, Ellen G. McGlone, Elene Mountis Moran, Thorp, Reed & Armstrong, Pittsburgh, PA, for appellant.

Gary M. Davis, Pittsburgh, PA, for appellee.

### OPINION and ORDER OF COURT

AMBROSE, District Judge.

Margaret D. Hohl appeals an order of the Honorable Bernard Markovitz, Bankruptcy Judge, remanding to the Court of Common Pleas of Allegheny County, Pennsylvania, an adversary proceeding in which she is the defendant. The order is reversed and the proceeding remanded to the Bankruptcy Court for further consideration in light of the Opinion which follows.

### I. INTRODUCTION

#### A. Factual History [1]

Charles Bastian ("Mr. Bastian" or "Appellee") worked as a communications technician for Dow Jones & Co. ("Dow Jones") in Pittsburgh, Pennsylvania, from February 1984 to May 1998. At that time, Bridge Information Systems, Inc. ("Bridge"), headquartered in St. Louis, Missouri, purchased Dow Jones Markets,

---

1. Unless otherwise noted, the facts in this section are undisputed.

the division for which Mr. Bastian worked. His employment continued with Bridge after the sale.

Margaret D. Hohl ("Ms. Hohl" or "Appellant"), a senior vice president of the company and its director of human resources, wrote to Mr. Bastian on June 16, 1998, advising him that his position with Bridge would be terminated as of September 1, 1998 (the "Termination Letter"). As encouragement for him to remain on the job, however, he was offered fourteen weeks' severance pay if he did not voluntarily leave his position and was not terminated for cause before that date. The Termination Letter stated that payment of the benefit was governed exclusively by Bridge's severance pay plan.

In an arbitration held in July 1998, it was determined that Mr. Bastian, along with other union employees affected by the sale of Dow Jones Markets to Bridge, was entitled to severance pay from Dow Jones. (Brief of Appellant Margaret D. Hohl, Docket No. 1, "Hohl Brief," at 5.) Dow Jones agreed to pay those benefits and Ms. Hohl again wrote to Mr. Bastian on August 31, 1998, stating that because he had received the severance pay he was owed through May 28, 1998, from Dow Jones, he would not be credited for that period in determining any severance pay he might receive directly from Bridge. Mr. Bastian received and accepted severance pay from Dow Jones but received no severance pay from Bridge.

Mr. Bastian sued Bridge in the Court of Common Pleas of Allegheny County for breach of contract and violation of the Pennsylvania Wage Payment and Collection Law ("the WPCL"), 43 P.S. § 260.1 *et seq.* (*Bastian v. Bridge Information Systems, Inc.,* Case No. AR 99–5602, "*Bastian v. Bridge.*") In that suit, Mr. Bastian sought severance pay, attorney's fees, interest and liquidated damages, based on the Termination Letter. (Brief of Appellee Charles Bastian, "Bastian Brief," Docket No. 2, at 4.) After an arbitration panel found for Bridge in a split decision, Mr. Bastian appealed to the Court of Common Pleas of Allegheny County. (*Id.*) The trial court entered an award in favor of Mr. Bastian to which Bridge filed post-trial motions. (*Id.*)

On February 15, 2000,[2] Bridge filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.,* in the Eastern District of Missouri (Case No. 01–14593). (Copies of Documents Designated to be included in the Record on Appeal, "Record," Tab 4, Amended Notice of Removal, ¶ 2.) The filing for bankruptcy stayed further prosecution of *Bastian v. Bridge* in which rulings of the trial court judge were still pending. (*Id.,* ¶ 3.) Mr. Bastian then filed suit in the Court of Common Pleas of Allegheny County against Ms. Hohl on June 19, 2001, alleging that as an officer and decision-maker of Bridge, she was personally liable under the WPCL for non-payment of the severance benefits. (Record, Tab 5, *Bastian v. Hohl,* Case No. AR 01–3841.)

### B. *Procedural History*

Pursuant to Rule 9027 of the Federal Rules of Bankruptcy Procedure, Ms. Hohl removed *Bastian v. Hohl* from the Court of Common Pleas to the Bankruptcy Court for the Western District of Pennsylvania on July 13, 2001, where it was docketed as Adversary Proceeding 01–2270. Immediately thereafter, on July 26, 2001, she filed a motion under 28 U.S.C. § 1412, seeking to transfer venue to the Bankruptcy Court

---

**2.** There is some confusion in the record as to the date on which Bridge filed for bankruptcy. Pleadings from both parties indicate that the filing occurred in February 2000 while Appellant's counsel at the hearing held by Judge Markovitz stated that it had occurred in February 2001.

for the Eastern District of Missouri.[3] (Record, Tab 7, "the Motion to Transfer.") In response, Mr. Bastian filed a motion to remand the suit to the Court of Common Pleas on August 13, 2001. (Record, Tab 11, "the Motion to Remand.") In her response to the Motion to Remand, Ms. Hohl alternatively requested that the Bankruptcy Court recommend a withdrawal of the reference to the District Court for the Western District of Pennsylvania or dismiss the Adversary Proceeding under Fed. R.Bankr.P. 7019. (Record, Tab 14, Response to Motion to Remand, ¶¶ 17–18.)

The proceeding was assigned to the Honorable Bernard Markovitz, U.S. Bankruptcy Court Judge. Judge Markovitz held a hearing on both the Motion to Remand and the Motion to Transfer on August 28, 2001. The following day, the Bankruptcy Court entered an Order granting Mr. Bastian's motion to remand the matter to the state court. (Record, Tab 19, "the August 29 Order.")

On September 10, 2001, Ms. Hohl appealed the decision of Judge Markovitz to the District Court for the Western District of Pennsylvania.

## II. STANDARD OF REVIEW

 This court has appellate jurisdiction over final orders of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1). A district court reviews *de novo* the bankruptcy court's conclusions of law and applies a clearly erroneous standard of review to the bankruptcy court's findings of fact. *In re Labrum & Doak*, CA 98–4780, 2000 WL 1204646, *1, 2000 U.S. Dist. LEXIS 12066, *5–*6 (E.D.Pa. Aug. 23,

2000), *citing Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir.1992). *De novo* review "extends to the bankruptcy court's application of the law to the facts." *In re RBGSC Investment Corp.*, 253 B.R. 369, 377 (E.D.Pa.2000). "A bankruptcy court's decision to remand a removed state court proceeding because it was not sufficiently related to the debtor's bankruptcy case presents a mixed question of law and fact." *In re Santa Clara County Child Care Consortium*, 223 B.R. 40, 42 (1st Cir. BAP 1998). A bankruptcy court's findings as to the effect of a related proceeding on the debtor are reviewed under the clearly erroneous standard of review. *In re G.S.F. Corp.*, 938 F.2d 1467, 1476 (1st Cir.1991).

## III. DISCUSSION

### A. The Bankruptcy Court's Findings

#### 1. The Adversary Proceeding is Not "Related to" the Bridge Bankruptcy Case

Judge Markovitz determined that the Adversary Proceeding did not fail within the scope of civil litigation generally referred to as "related to" a bankruptcy case. Specifically, the August 29 Order stated:

We accord little significance to defendant's assertion that the case should be transferred to the Eastern District of Missouri because it is "related to" the matter pending there. Should plaintiff prevail in state court here, we know of nothing that would prevent defendant from filing a contingent, unliquidated claim in the bankruptcy case. Allowing this matter to go forward in state court

---

**3.** A district court may transfer a case or proceeding under title 11 to a district court for another district in the interest of justice or for the convenience of the parties. 28 U.S.C. § 1412.

will have little, if any, effect on administration of the bankruptcy case. (August 29 Order, ¶ 8.)

### 2. *The Adversary Proceeding Should be Remanded to State Court on Equitable Grounds*

Judge Markovitz noted that "the court to which a case is removed from state court may remand it back to state court on any equitable ground." (*Id.*, ¶ 6.) He then wrote:

Although it is a close call, we conclude that the equities in this instance favor remanding the case back to state court, where plaintiff initially brought it. In particular, the inconvenience to defendant if the case is remanded is no greater than the inconvenience plaintiff would suffer if venue is transferred. It is more equitable under such circumstances to give significant weight to plaintiff's choice of forum and to allow the matter to proceed in the jurisdiction where the cause of action arose and where plaintiff and his counsel are located.

(*Id.*, ¶ 7.)

### 3. *The Court Would Not Address the Issue of Whether the WPCL is Preempted by ERISA*

Judge Markovitz's Order did not resolve the question of whether the WPCL cause of action stated by Mr. Bastian has been completely preempted by ERISA. Instead, he wrote:

Defendant has asserted that plaintiff's cause of action fails under and is preempted by ERISA. While it is true that, in certain situations, ERISA preempts WPCL, we are not willing to conclude on the present state of the record that plaintiff's cause of action is governed by ERISA rather than WPCL. Our refusal to conclude that plaintiff's case is governed by ERISA should in no way prejudice defendant's right to raise the matter in state court. Should it decide that ERISA controls, we are con-

fident that the state court will act appropriately. (August 29 Order, ¶ 9.)

### 4. *In Light of the Remand, the Court Would Not Consider the Motion to Transfer Venue*

Finally, Judge Markovitz determined that having remanded the case to the Court of Common Pleas of Allegheny County, it was not necessary to consider Ms. Hohl's motion to transfer venue of the Adversary Proceeding to the U.S. Bankruptcy Court for the Eastern District of Missouri. (August 29 Order, ¶ 10.)

### B. *Issues on Appeal and Relief Sought*

On appeal, Ms. Hohl raises seven different errors which she claims were committed by the Bankruptcy Court. Specifically, she argues that the Bankruptcy Court erred:

1. by remanding the Adversary Proceeding to state court rather than transferring it to the District Court for the Western District of Pennsylvania;

2. by failing to transfer the Motion to Remand to the Bankruptcy Court for the Eastern District of Missouri for consideration and resolution of that Motion;

3. when it weighed the equities and decided to remand the Adversary Proceeding to state court;

4. by failing to apply the "home court presumption" when considering her Motion to Transfer and Mr. Bastian's Motion to Remand;

5. by failing to conclude that plaintiff's cause of action under the Wage Payment and Collection Law was preempted by ERISA;

6. by failing to take factual evidence that would have permitted the court

to conclude that the WPCL was preempted by ERISA; and

7. in denying the Motion to Transfer the Adversary Proceeding to the Bankruptcy Court for the Eastern District of Missouri where Bridge, a related and possibly necessary party, filed its Chapter 11 bankruptcy case.

(Hohl Brief at 2.)

Appellant presents this Court with four alternative forms of relief, depending on which errors or combinations thereof I conclude the Bankruptcy Court committed. She seeks an order which would:

1. dismiss the Adversary Proceeding for failure to join a necessary party; or

2. reverse the Bankruptcy Court's order remanding the proceeding to state court, remand the case to the Bankruptcy Court for the Western District of Pennsylvania, and order the Bankruptcy Court to transfer this case to the Bankruptcy Court for the Eastern District of Missouri; or

3. remand this case to the Bankruptcy Court to determine if this case is preempted by ERISA; or

4. withdraw the reference and maintain jurisdiction of this matter in the U.S. District Court for the Western District of Pennsylvania.

(Hohl Brief at 26–27.)

Because I agree with Appellant that the Bankruptcy Court erred by failing to conclude that *Bastian v. Hohl* "related to" the Bridge bankruptcy case now pending in the Eastern District of Missouri, and therefore should have retained jurisdiction in order to more fully address the Motion to Transfer the matter to the "home court" in Missouri, I will reverse the court's order remanding the proceeding to the Court of Common Pleas of Allegheny County, remand this case to the Bankruptcy Court, and direct the Court to further consider Appellant's arguments regarding transfer of this case.

### C. Legal Analysis

#### 1. "Related to" Jurisdiction

■ Like other federal courts, bankruptcy courts are courts of limited jurisdiction. *In re Papercraft Corp.*, 211 B.R. 813, 821–22 (W.D.Pa.1997). However, once a federal court is determined to properly have jurisdiction over a matter, it has a "virtually unflagging obligation" to exercise the jurisdiction conferred upon it by the Constitution or Congress. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 821, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

■ Analysis of a bankruptcy court's jurisdiction begins with 28 U.S.C. § 1334. *U.S. Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 555 (3d Cir. 1999) ("*Gryphon*"), citing *Belcufine v. Aloe*, 112 F.3d 633, 636 (3d Cir.1997). "Section 1334 provides that the district courts 'shall have original and exclusive jurisdiction of all cases under title 11,' and 'original, but not exclusive, jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.'" *Gryphon, id., citing* 28 U.S.C. § 1334(a)-(b). A district court may provide that any or all such cases and proceedings shall be referred to the bankruptcy judges for the district. 28 U.S.C. § 157(a). The phrase "cases under title 11" refers to the bankruptcy filing itself. *Stamm v. Rapco Foam, Inc.*, 21 B.R. 715, 723 (Bankr.W.D.Pa.1982) ("the 'case' includes the actual administration of the bankruptcy from the time of its filing until the case is finally closed"). Proceedings (i.e., contested matters, adversary proceed-

ings, and plenary actions) "arising under title 11" are those civil actions which are created or determined by the Bankruptcy Code. *In re Santa Clara Child Care Consortium*, 223 B.R. at 43, n. 2. Civil proceedings "arising in" a bankruptcy case are those which derive from state causes of action but would have no existence outside of the bankruptcy. *Id.* at 43, n. 3. "Related to" claims are state law claims which could have been brought outside the scope of bankruptcy and do not address debtor-creditor rights. *Id.* at 43, n. 4; see also *In re Wood*, 825 F.2d 90, 97 (5th Cir.1987) ("If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy . . . it may be related to the bankruptcy because of its potential effect.") The "related to" language is intended to force proceedings that would ordinarily be stand-alone lawsuits into the bankruptcy court so that all claims by and against the debtor can be decided in the same forum. *Zerand–Bernal Group, Inc., v. Cox*, 23 F.3d 159, 161 (7th Cir.1994). A proceeding which fails within any of these categories may be heard by the bankruptcy court in proper exercise of its jurisdiction. *Donaldson v. Bernstein*, 104 F.3d 547, 552 (3d Cir.1997). Since the fourth category is the broadest, a court "need only determine whether a matter is at least related to the bankruptcy" in order to establish jurisdiction. *Donaldson, id.*, quoting *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 264 (3d Cir.1991).

■■■ Appellant argued at the hearing before the Bankruptcy Court on August 28, 2001 that the court properly had juris-

diction over this matter by virtue of the fact that it was "related to" the pending Bridge bankruptcy case. (Transcript of Hearing of August 28, 2001, "Transcript," at 9–10.) Appellant argues that because her employer's bylaws indemnify her for any legal consequences of actions taken in good faith within the scope of her employment, the outcome of *Bastian v. Hohl*, even if it is in her favor, will necessarily have an effect on the assets of the Bridge bankruptcy estate. As a related proceeding, therefore, it should be transferred to the Eastern District of Missouri. (Transcript, *id.;* Hohl Brief at 21–22.)

As noted above, the Bankruptcy Court held that there was "little significance" to these assertions. (August 29 Order, ¶ 8.) The Court's conclusions were that Ms. Hohl's interests could be protected by filing a contingent, unliquidated claim in the bankruptcy case and that allowing Mr. Bastian's case to continue in state court would "have little, if any, effect on administration of the bankruptcy case." (*Id.*) In deciding to relinquish jurisdiction over this proceeding, the Bankruptcy Court failed to consider that an indemnification relationship such as exists here has been specifically recognized by the Third Circuit Court of Appeals as potentially giving rise to "related to" status for an otherwise remote claim. *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir.1984).[4]

In that case, Higgins brought suit in the Court of Common Pleas for damages allegedly caused by his work-related exposure to asbestos products manufactured by Johns–Manville Corporation ("Manville")

---

**4.** *In Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995), the Supreme Court overruled *Pacor* in part, holding that the procedural requirements of 28 U.S.C. § 1447(d) do apply to a case removed under the special bankruptcy provisions of 28 U.S.C. § 1452. *See Donald-*

son, 104 F.3d at 553, n. 1. *Things Remembered*, however, does not affect *Pacor* on the point for which it is cited herein. *See*, e.g., *Belcufine* and *Gryphon*, both subsequent to *Things Remembered* and both applying the test established in *Pacor* for "related to" status.

and distributed by Pacor. *Id.* at 986. Pacor filed a third party complaint impleading Manville who subsequently filed for bankruptcy in the United States Bankruptcy Court for the Southern District of New York. The Court of Common Pleas severed the third-party complaint against Manville, but just as the Pacor–Higgins case was about to go to trial, Pacor removed the controversy to the Bankruptcy Court in the Eastern District of Pennsylvania and filed a motion for change of venue to the Southern District of New York in order to join it with the Manville bankruptcy. *Id.* After some jurisdictional wrangling, the district court ruled that the Pacor–Higgins suit was "not related to" the Manville bankruptcy and therefore remanded the action to state court. *Id.*

Noting that "the jurisdiction of the bankruptcy courts to hear cases related to bankruptcy is not without limit," the Third Circuit Court of Appeals concluded that for the bankruptcy court to act within its statutory and constitutional limits and for subject matter jurisdiction to exist, "there must be some nexus between the 'related' civil proceeding and the title 11 case." *Pacor,* 743 F.2d at 994. Because neither of the parties in the case was the debtor in bankruptcy, the Court questioned whether the action was "still sufficiently connected with the Manville bankruptcy estate, such that jurisdiction lies under 28 U.S.C. § [1334(b) ]." [5] *Id.*

The Court noted:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate. On the other hand, the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section [1334(b) ].

*Pacor,* 743 F.2d at 994, internal citations omitted.[6]

The Court then discussed an issue precisely on point to the matter before Judge

---

**5.** The original refers to 28 U.S.C. § 1471(b) which was reenacted as 28 U.S.C. § 1334(b) as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984.

**6.** In *Celotex Corp. v. Edwards,* 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995), the Supreme Court noted that the *Pacor* test had been adopted "with little or no variation" by the First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits. *Id.* at 308, n. 6, 115 S.Ct. 1493. The Court did not explicitly adopt or approve the *Pacor* test, nor for that matter, the slightly different tests adopted by the Second and Seventh Circuits. The more narrow test established in the Seventh Circuit is whether resolution of the controversy in question "affects the amount of property available for distribution or the allocation of property among creditors." *In re Xonics,* 813 F.2d 127, 131 (7th Cir.1987). On the issue of indemnification giving rise to "related to" status, compare the outcome of the *Pacor* analysis with that of *In re Spaulding & Co.,* 131 B.R. 84 (N.D.Ill.1990), concluding that even if a non-debtor's complaint seeking indemnification from debtor's former legal counsel were successful, it would affect allocation of the debtor's assets but not the size of the estate, and even if the plaintiff were to file a contingent claim, the effect on allocation of the estate was too remote. *Id.* at 89. The Second Circuit test, established in *Turner v. Ermiger,* 724 F.2d 338, 341 (2d Cir.1983), is whether the action possesses "a significant connection" to the bankruptcy case.

Markovitz. The Court concluded that the outcome of the Pacor–Higgins action would in no way bind Manville, but was "at best, ... a mere precursor to the potential third party claim for indemnification by Pacor against Manville.... Any judgment received by the plaintiff Higgins could not itself result in even a contingent claim against Manville, since Pacor would still be obligated to bring an entirely separate proceeding to receive indemnification." *Id.* at 995.

By way of comparison, the Court then discussed *In re Brentano's*, 27 B.R. 90 (Bankr.S.D.N.Y.1983) in which MacMillan agreed to guarantee the lease obligations of the debtor, Brentano's, in exchange for Brentano's agreeing to indemnify MacMillan for any liability arising out of the guaranty. Brentano's defaulted on the lease, the landlord sued MacMillan, and MacMillan successfully removed the action to bankruptcy court as a proceeding "related to" the bankruptcy. The bankruptcy court held that the disposition of MacMillan's Indemnification claim and others similar to it would "ultimately determine the fate of [the] reorganization effort." *Brentano's*, 27 B.R. at 92. In comparing the factual situation in *Pacor* with that of *Brentano's*, the Third Circuit noted that "by virtue of the indemnification agreement between Brentano's and MacMillan, a judgment in favor of the landlord on the guarantee action would automatically result in indemnification liability against Brentano's." *Pacor*, 743 F.2d at 995.

Under the *Pacor* test, jurisdiction is still difficult to establish for the "vast majority" of third party complaints. *In re Remington Development Group*, 180 B.R. 365, 369 (Bankr.D.R.I.1995). Those which survive the jurisdictional analysis often involve precisely the type of indemnification relationship between the debtor and the third-party defendant as is present here. *See,*

for instance, *Philippe v. Shape, Inc.*, 103 B.R. 355 (D.Me.1989), holding that because the debtor's bylaws expressly provided for unconditional indemnification of its officers, the litigation between the plaintiff and those officers was related to the bankruptcy proceeding. The *Philippe* court applied the *Pacor* test, but reached a diametrically opposite conclusion, holding that:

> by virtue of the apparently unconditional duty to indemnify, a judgment in favor of Plaintiff in this action would automatically result in indemnification liability on the part of Shape. This, in turn, would necessarily affect the administration of the Shape bankruptcy estate, as some part of the estate otherwise owing to existing creditors would be susceptible to being diverted to meet this indemnity obligation. Therefore, under the *Pacor* definition adopted by this Court in *Omni Hotels*, the proceedings are related as the term is used in 28 U.S.C. § 157(c)(1).

*Philippe*, 103 B.R. at 358, referring to *Central Maine Restaurant Supply v. Omni Hotels*, 73 B.R. 1018 (D.Me.1987).

The circumstances here are precisely parallel to those in *Brentano's* and *Philippe*—Bridge has agreed to indemnify Ms. Hohl with regard to actions she took within the scope of her employment. The company's bylaws state in relevant part:

> The corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit, or proceeding, whether civil, criminal, administrative or investigative, other than an action by or in the right of the corporation, by reason of the fact that he is or was a director, officer, employee or agent of the corporation... against expenses, including attorneys' fees, judgements [sic], fines and amounts paid

in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation. (Record, Tab 14, Exhibit A to Response to Motion to Remand Case to Court of Common Pleas of Allegheny County, Amended and Restated By–Laws of Bridge Information Systems, Inc., as amended July 18, 1996, "Bridge Bylaws," Article V, Section 1.)

The only conditions attached to this indemnification provision are that no Indemnification will be made in respect of claims in which the person is determined to be liable for negligence or misconduct in the performance of her duty to the corporation,[7] and that the board of directors must agree that the officer acted in good faith and with the reasonable belief that she was acting in the company's best interests. (Bridge Bylaws, Article V, Section 4.) These are far less onerous than those in *Omni Hotels*, where the court concluded that the right to Indemnification was uncertain because the indemnification provision was of limited duration, the indemnified party was required to promptly notify the other party of its intent to invoke the contractual provision, and a specific request for defense and payment had to be made to the debtor. *Omni Hotels*, 73 B.R. at 1023–24. *See* also *In re Athos Steel & Aluminum, Inc.*, 71 B.R. 525, 536 (Bankr. E.D.Pa.1987), holding that "related to" jurisdiction was established by virtue of a provision in the debtor's bylaws which indemnified co-defendant officers and directors; *Kossman v. The TJX Companies, Inc.*, 136 B.R. 640, 642 (W.D.Pa.1991), holding that an indemnification provision

in an acquisition agreement between the defendant and the debtor provided the basis for "related to" jurisdiction over plaintiff's claims for breach of a commercial lease.

Here, the Bridge Bylaws do not require Ms. Hohl to initiate a separate action against the corporation or meet other preconditions in order to invoke the indemnification provision. Nor would she need to file a contingent claim against the estate as suggested by the Bankruptcy Court. (Transcript, 9, August 29 Order, ¶ 8.) Under the language of the indemnification bylaw, the mere existence of *Bastian v. Hohl* creates a potential new liability for Bridge. It is equally clear that unless the company's board of directors were to find that by sending the Termination Letter to Mr. Bastian, Ms. Hohl was acting outside the scope of her responsibilities or not in the best interests of her employer, Bridge's liabilities will be affected by a decision in favor of either party in that case, with far greater exposure resulting, of course, from a monetary judgment in favor of Mr. Bastian.

Appellee argued to the Bankruptcy Court that the indemnification commitment is relatively unimportant because Bridge has purchased an insurance policy to cover its exposure in this regard; hence, any indemnified expenses would be paid by the insurer and would not affect the Debtor's bankruptcy estate. (Record, Tab 11, Plaintiff's Motion to Remand, ¶ ¶ 8–10.) However, a brief review of the policy itself shows that it covers losses only in excess of "any applicable retention," which appears from the face of the policy to be $50,000. (Record, Tab 14, Exhibit B, Directors and Officers Liability Insurance Policy Including Company Reimburse-

---

**7.** This condition does not apply if the court adjudicating the negligence or misconduct claim determines that the officer "is fairly and reasonably entitled to indemnity for the expenses." (Bridge Bylaws, Article V, Section 2.)

ment, Section II(F), Definitions, and Insurance Binder dated June 18, 2001.) Since Mr. Bastian's claim, before attorneys' fees and costs, appears from the record to be less than that amount, the existence of insurance may be irrelevant.[8]

The second prong of the *Pacor* test is whether the action "in any way impacts upon the handling and administration of the bankrupt estate." *Pacor*, 743 F.2d at 994. This prong is equally all-encompassing. "Certainty, or even likelihood," of such an effect "is not a requirement." *Marcus Hook*, 943 F.2d at 264. In applying the *Pacor* test, the Eighth Circuit Court of Appeals concluded that "even a proceeding which portends a mere contingent or tangential effect on a debtor's estate" would meet this test. *In re Titan Energy Inc.*, 837 F.2d 325, 330 (8th Cir. 1988).

■■■ The *Pacor* test does not require the bankruptcy court to satisfy itself that the outcome of the potentially "related to" litigation *will* impact the estate to some certain degree, but only that it *may* have some effect. *In Re Wolverine Radio Co.*, 930 F.2d 1132, 1143 (6th Cir.1991) (The bankruptcy court must consider a proceeding related to the bankruptcy even if the particular dispute ultimately has no effect on the debtor, so long as the court cannot conclude that it will have no conceivable effect.) It is highly conceivable that the outcome of *Bastian v. Hohl* will have an effect on both allocation of the debtor's assets and the administration of the debtor's estate. It is unclear, for instance, if the estate could be closed until the effects of the indemnification provision are deter-

mined. And, as noted above, a decision in favor of either Ms. Hohl or Mr. Bastian may affect distribution of the company's assets if the insurance policy does not come into play and some part of the estate must be allocated to cover the expenses of litigation.

I conclude that Ms. Hohl has shown that by virtue of the indemnification provision in the company's bylaws, *Bastian v. Hohl* is related to the Bridge bankruptcy case. Therefore, the Bankruptcy Court's opposite conclusion that remanding the matter to state court was proper because the outcome of that case would have little effect on the Bridge bankruptcy was an error of law.

2. *Motion to Transfer the Adversary Proceeding to the Bankruptcy Court of the Eastern District of Missouri*

Judge Markovitz determined at the hearing on August 28, 2001, that the proper order in which to consider the motions pending before him was to first consider the Motion to Remand and then, if necessary, the Motion to Transfer. He subsequently decided that inasmuch as he was remanding the case to the Court of Common Pleas, he did not need to consider the motion for change of venue. (August 29 Order, ¶ 10.) Appellant argues that this was error because, under the "home court presumption," the proper action would have been to transfer the adversary proceeding to the bankruptcy court in Missouri, which would then consider the motion to remand. (Hohl Brief at 23–26.) Both at the hearing and in her brief in support of the Motion to Transfer, Ms. Hohl argues that "the weight of authority"

---

**8.** Moreover, one of the exclusions stated in the insurance policy relates to any loss, including defense expenses, for claims based on any actual or alleged violation of ERISA or similar laws. (Record, Tab 14, Exh. B. Section III(C), Exclusions.) If it were deter-

mined that *Bastian v. Hohl* arose out of a violation of ERISA, or if the WPCL were determined to be "a similar law," it is possible that the insurance policy would not come into play, leaving any expenses related to the case to be covered by Bridge directly.

supports this position. (*Id.* at 26; Transcript at 14, 18–19.)

As a typical case applying the home court presumption, Appellant relies on *In re Allegheny Health, Education and Research Foundation,* Case No. 98–25773, 1999 WL 1033566, 1999 Bankr.LEXIS 1401 (Bankr.E.D.Pa. Nov. 10, 1999) (*"AHERF"*). In that case, Bankruptcy Judge David A. Scholl granted the defendant's motion to transfer an adversary proceeding between two non-debtors to the Bankruptcy Court for the Western District of Pennsylvania and deferred a decision regarding the plaintiff's motion to remand to that court. *Id.* at *1, 1999 Bankr.LEXIS 1401 at *2. Judge Scholl stated:

> The weight of authority, including several decisions of this Court, provide that, where a bankruptcy court is simultaneously confronted with (1) a Motion, pursuant to 28 U.S.C. § 1412, to transfer or change the venue of an action which has been removed to it pursuant to 28 U.S.C. § 1452(a); and (2) a Motion to remand or otherwise abstain from hearing the change of venue action, pursuant to 28 U.S.C. § 1334(c), the action should be transferred to the "home" court of the bankruptcy to decide the issue of whether to remand or abstain from hearing the action.

*AHERF,* 1999 WL 1033566 at *1, 1999 Bankr.LEXIS at *2–3, *citing,* among others, *Colarusso v. Burger King Corp.,* 35 B.R. 365, 366–68 (Bankr.E.D.Pa.1984) (per Goldhaber, Ch.J.); *Stamm v. Rapco Foam, Inc.,* 21 B.R. 715, 723–25 (Bankr. W.D.Pa.1982) (per Cosetti, Ch.J.); *In re Convent Guardian Corp.,* 75 B.R. 346, 347 (Bankr.E.D.Pa.1987); *In re Gross Metal Products,* 1997 WL 778756, *1, 1997 Bankr.LEXIS 2041, *2 (Bankr.E.D.Pa. Dec. 16, 1997).

Unfortunately, in *AHERF,* Judge Scholl never explains the logic and reasoning of the home court presumption. However, this gap is satisfied in opinions from other bankruptcy courts; for instance, the Bankruptcy Court for the Northern District of Ohio, while considering the same combination of motions, has provided the analysis missing in cases such as *Convent Guardian, Colarusso* and *Stamm,* all *supra.* In discussing why It was transferring the adversary proceeding to the Bankruptcy Court in the Northern District of Oklahoma, rather than undertaking consideration of the motion to remand itself, the court concluded:

> Obviously, the Oklahoma Court is more familiar with the pending bankruptcy case and what may be required for its efficient administration. In addition, the Court which would try the case can better evaluate all the interests involved, and determine its own expertise in the particular areas of the law which form the basis of the action, as well as its own scheduling and time constraints. This Court's speculation on these matters would not be an adequate substitute for a knowledgeable determination based upon the actual facts and circumstances. Moreover, allowing the Oklahoma Court to rule on the remand minimizes the potential conflicts which could arise due to differences in controlling authority between the Courts. Accordingly, a final ruling on the venue issues, and the many sub-issues which have been raised within the context of venue, remand, and abstention, should be left to the "home" Bankruptcy Court in Oklahoma.

*In re Aztec Industries, Inc.,* 84 B.R. 464, 467 (Bankr.N.D.Ohio 1987).

In sum, the home court presumption provides that the court in which the bankruptcy case itself is pending is the proper venue for adjudicating all related litigation, including those suits which have been filed in other state or federal courts.

*Stamm,* 21 B.R. 715 at 723–724. While the decision to transfer a bankruptcy proceeding is discretionary (under 28 U.S.C. § 1412, "a district court *may* transfer a case or proceeding"), I agree with the *Stamm* court that without the home court presumption, "bankruptcy courts in one district would interfere with the orderly administration of a case filed in another district." *Id.* at 724.

 Here, the facts appear to favor transfer rather than retention. The bankruptcy court in the Eastern District of Missouri would obviously be more familiar with the Bridge case than any other court and, presumably with the implications of the company's organizational documents, including the bylaws and the indemnification provision. Consequently, it will be well-positioned to determine how and to what extent the outcome of *Bastian v. Hohl* will affect administration of the bankruptcy estate and distribution of its assets. However, I conclude that because the Bankruptcy Court failed to fully consider the effects of *Bastian v. Hohl* as litigation related to the Bridge bankruptcy, it consequently did not fully explore the issue of transfer. Based on the record before me, I believe the motion for change of venue should be addressed in more depth. Therefore, rather than transfer the case to the Eastern District of Missouri myself, I will reverse the portion of the August 29 Order dismissing the motion to transfer and remand the case to the Bankruptcy Court for further consideration.

### 3. *Other Claims of Error Raised on Appeal*

Appellant also has claimed that the Bankruptcy Judge erred (1) by failing to

dismiss the Adversary Proceeding because Bridge, a necessary party in *Bastian v. Hohl,* could not be joined; (2) by failing to conclude that Appellee's cause of action under the Wage Payment and Collection Law is preempted by ERISA and by failing to take factual evidence that would have permitted the Bankruptcy Court to reach that conclusion; and (3) by remanding the Adversary Proceeding to state court rather than transferring it to the District Court for the Western District of Pennsylvania to consider the federal question raised by the alleged ERISA preemption. These questions, too, would be more properly addressed by the court which ultimately addresses the questions of law raised in *Bastian v. Hohl.*

### 4. *Remand on "Any Equitable Ground"*

Even though I have concluded that the Bankruptcy Court should have retained jurisdiction of this matter and either addressed the arguments raised by Appellant regarding preemption and joinder or transferred venue to the Bankruptcy Court for the Eastern District of Missouri, I will briefly address the Court's conclusion that the case could be remanded on "any equitable ground." [9] The Bankruptcy Judge stated that:

> Although it is a close call, we conclude that the equities in this instance favor remanding the case back to state court, where plaintiff initially brought it. In particular, the inconvenience to defendant if the case is remanded is no greater than the inconvenience plaintiff would suffer in venue is transferred. It is more equitable under such circumstances to give significant weight to

---

**9.** "The court to which [a] claim or cause of action is removed may remand [it] on any

equitable ground." 28 U.S.C. § 1452(b).

plaintiff's choice of forum and to allow the matter to proceed in the jurisdiction where the cause of action arose and where plaintiff and his counsel are located.

(August 29 Order, ¶ 6.)

Mr. Bastian argues that Judge Markovitz correctly ascertained that in determining whether a case should be remanded, "the primary consideration is the prejudice which the involuntarily removed party . . . would experience if the case were transferred." (Bastian Brief at 7.) He further argues that the Bankruptcy Court correctly determined that the Adversary Proceeding should be remanded back to state court by applying the seven factor test set out in *In re RBGSC Investment Corp.*, 253 B.R. 369 (E.D.Pa.2000). (Bastian Brief at 11.) However, in reviewing the record and the relevant law, I conclude that Appellee's first argument is based on an incorrect interpretation of the law and his second on pure speculation.

■■■ In considering a motion for remand on equitable grounds, rather than simply weighing the potential inconvenience to the two parties and giving deference to the plaintiff's choice of forum, bankruptcy courts in this circuit apply the following factors:

1) the effect on the efficient administration of the bankruptcy estate;

2) the extent to which issues of state law predominate;

3) the difficulty or unsettled nature of the applicable state law;

4) comity;

5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

6) the existence of a right to a jury trial; and

7) prejudice to the involuntarily removed defendants.

*In re RBGSC Investment Corp.*, 253 B.R. at 377–78, *citing Drexel Burnham Lambert Group, Inc. v. Vigilant Insurance Co.*, 130 B.R. 405, 407 (S.D.N.Y.1991); *see also In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. 750, 760 (D.N.J.1996).

The Bankruptcy Court made no explicit findings and did not discuss the seven *RBGSC* factors. The August 29 Order and the transcript of the hearing reflect only passing allusions to the unresolved issue of whether state or federal law predominates (*see*, e.g., Transcript at 15, 19–20) or the Judge's conclusion that the Adversary Proceeding was not related to the bankruptcy case (August 29 Order, ¶ 8), and that its outcome would have little effect on the efficient administration of the estate (*id.*) Only the prejudice and inconvenience to Mr. Bastian was addressed in any depth at the hearing or mentioned in the August 29 Order as the basis for equitable remand. (Transcript at 7, 11; August 29 Order, ¶ 7.) Moreover, Appellee does not provide—and independent research has failed to reveal—support for his conclusion that the seventh factor, prejudice to the involuntarily removed party,[10]

---

10. Appellant argues that this factor should be strictly applied and should not weigh in favor of Mr. Bastian because he is the plaintiff and not the defendant in the removed action. (Reply Brief of Appellant Margaret D. Hohl, Docket No. 3, at 5–6, *quoting In re RBGSC Investment Corp.*, 253 B.R. at 382–83 ("With respect to prejudice to involuntarily removed defendants, any prejudice that Appellants al-

lege would accrue to them from a denial of remand cannot go to this factor as they are the plaintiffs, and not the defendants, in the state court action.")) Other courts in this circuit, however, have defined the seventh factor as applying to the involuntarily removed "parties." *See*, e.g., *Shubert v. Roche Holding Ag*, 157 F.Supp.2d, 542, 547 (E.D.Pa. 2001), finding that the seventh factor worked

is entitled to greater weight than the other six factors. I conclude, therefore, that to the extent the Bankruptcy Court determined that the case should be remanded to the Court of Common Pleas based only on inconvenience to Mr. Bastian if the case were transferred to Missouri and on deference to his choice of forum, the Court erred by failing to consider and apply the more comprehensive equitable factors listed above.

in favor of the involuntarily removed plain- tiffs.